## BEN PARKS v. THE STATE.

*No. 854.   Decided January 22nd, 1896.*

**1.   Continuance to Prove Character.**

An application for a continuance will not be granted for witnesses to prove defendant's good character.

**2.   Requested Instructions—Practice.**

It is not error to refuse requested instructions which are covered by the general charge; and this rule obtains even where the requested instructions are more elaborate, if the charge of the court as given be sufficient.

**3.   Bill of Exceptions to Exclusion of Evidence—Sufficiency of.**

Bill of exceptions to the exclusion of evidence, to be sufficient, must state distinctly the facts that were expected to be proved by the witnesses.

**4.   Seduction—Evidence—Reputation—Statements by Prosecutrix.**

On a trial for seduction, mere reports and rumors in the neighborhood as to the character and conduct of the prosecutrix are inadmissible, unless these rumors, reports, etc., go to make the general character for virtue or the want thereof.   A witness may testify as to the general reputation, but not otherwise.   Any act or statement of the prosecutrix tending to show a want of virtue might be admissible, but it must be proved by witnesses who saw the act or heard the statements; they cannot be proved by evidence of statements of third parties in regard thereto.

**5.   Charge—Circumstantial Evidence.**

Where the evidence in the case is of a positive character a charge upon circumstantial evidence which is correct will not be revised.

**6.   Abuse of Argument by Counsel.**

On a trial for seduction counsel for the prosecution, in his closing argument, walked up to the defendant, and shaking his finger in his face, said: "You, the scoundrel, the villain, brute and seducer that you are, would not only rob an innocent girl of her virtue, but would go further and slander her poor old mother, and the penitentiary is too good for you," and defendant's counsel asked the court to admonish counsel to keep within the record, and not indulge in such argument, and requested the court to charge the jury not to consider the same; but the court ignored the objections and exception thus raised by defendant, to all of which defendant saved his bill of exceptions.   And in said closing argument counsel further said to the jury, "that the defendant, with his white cravat, white shirt and standing collar, is a professor, and you, gentlemen of the jury, are taxed and have to go down in your pockets for your hard-earned money to pay the salary of this dude professor to debauch and ruin young girls."   Held:  The remarks were well calculated to inflame the minds of the jury and prejudice the defendant's right, and under the circumstances constituted reversible error.

**7.   Same—Practice on Appeal.**

When it has been made to appear on appeal that remarks have been made outside the evidence in the case, especially of a denunciatory character, such as are calculated to inflame the minds of the jury against the defendant, and more especially when such remarks are made in the closing argument with no opportunity to reply on the part of the defendant, it is the duty of this court to interfere.

Appeal from the District Court of Falls.   Tried below before Hon. S. R. Scott.

This appeal is from a conviction for seduction, the punishment assessed being four years' imprisonment in the penitentiary.

In view of the disposition made by the court of this case, on this appeal, it becomes unnecessary to make a statement of the same.   It will be seen that the reversal was solely on account of improper and prejudicial argument made by counsel representing the prosecution.   The objectionable language is fully disclosed in the opinion.

*Rice & Bartlett*, for appellant.—Upon the proposition that the language indulged in by counsel representing the prosecution in the closing argument to the jury, constituted reversible error, they cited Thompson v. State, 33 Tex. Crim. Rep., 475; Exon v. State, 33 Tex. Crim. Rep., 469; Boscow v. State, 33 Tex. Crim. Rep., 390; Habel v. State, 28 Tex. Crim. App., 589; Pierson v. State, 18 Tex. Crim. App., 524; Hatch v. State, 8 Tex. Crim. App., 416; McConnell v. State, 22 Tex. Crim. App., 354; Ency. of Pleading and Practice, Vol. 2, pp. 748-9-750-51; State v. Proctor, (Iowa) 53 N. W. Rep., 424; State v. Fisher, (Mo.) 27 S. W. Rep., 1109; Mathews v. State, 23 S. W. Rep., 690; Martin v. State, 63 Miss., 505; Crim. Law Mag., Vol. 3, p. 620, et seq., Vol. 9, p. 741; Rules of Supreme Court; Willson's Crim. Stat., Sec. 2321, and authorities.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, Presiding Judge.—Appellant in this case was tried for seduction, was convicted, and his punishment assessed at four years in the penitentiary.   A great number of assignments of error are contained in the record, but we will only notice such as appear to us to be important. Appellant complains of the action of the court in overruling his motion for a continuance.   The same question is also presented in his motion for a new trial.   The most material witness, to-wit: W. H. Parks, for whom the application for continuance was asked, was present in court, and testified on the trial.   As to two of the absent witnesses, to-wit: Schell and Taylor, for whom a continuance was asked, by whom it was proposed to prove that the defendant bore a good reputation for honesty and virtue in the community where he lived, one of said parties was present at the trial, and the defendant failed to put him on the stand, and as to the other, we do not think the diligence was sufficient; but, even if it was, we can not presume, in view of the fact that appellant did not put Taylor on the stand, who was present, and by whom they proposed to prove the same fact, that Schell would have been of any more service to the defendant in that regard than Taylor.   In addition to this, appellant could not continue for character witnesses.   This is the general rule.   As to the witness, Nancy Frazier, even if her testimony, as shown in the application, would have been admitted, which is doubtful, the diligence to procure her attendance, was clearly insufficient.   The

court gave a charge in this case covering every salient feature as pre-
sented by the evidence, both for the State and the defendant.   The de-
fendant asked a number of charges covering the same ground already
covered by the court in its charge.   While some of the defendant's
requested charges are more elaborate, yet we think the charges given by
the court upon the same subjects sufficient in this case.   As to the
special charge asked by the defendant in regard to Emiline Alexander,
the mother of the prosecutrix, being an accomplice, it is sufficient to say
that said charge·was properly refused; there being no evidence in the
record to authorize it.   There are several bills of exception in the record
taken to the exclusion of testimony.   In our opinion, the bills in question
are too general.   They do not state distinctly the facts that were ex-
pected to be proven by said witnesses.   In no case can reports or rumors
be received· in testimony.   The facts upon which they are based, if
relevant, may be evidence, but not the rumors in a neighborhood, unless
these rumors, reports, and discussions go to make the general character
for virtue, or the want thereof.   This being the case, a witness may
speak to the general reputation of a person, but not otherwise.   Any act
or statement made by the prosecutrix in this case which tends to show
the want of virtue might be admissible, but it must be proven by
witnesses who heard or witnessed the statements and acts; and the bill
must show that these acts or statements were proposed to be proven by
those who heard or witnessed them.   If, in the presence of the witness,
Mose Harris, or any one else, the prosecutrix made a statement or stood
mute when charged with a want of chastity, these facts could be proven
by those who witnessed them, and not by what Mose Harris stated to
others.   Mose Harris was a witness for the defendant, and was on the
stand, and testified to facts favorable to the defendant.   By him the
conduct of the prosecutrix could have been shown to the jury, if it indi-
cated a want of chastity, but what Mose Harris said to others after-
wards could not be admitted.   Nor could appellant impeach Mose
Harris, because he did not relate to the jury this conduct.   In this con-
nection, the bill of exceptions does not show that Alf Childs knew of
his own knowledge the cause of Mose Harris leaving the Robert Alexan-
der place.   If there was any cause, it would seem that Mose Harris
must have been aware thereof, and if such cause was admissible evidence
in this case, it could have been proven by said Harris.

    Appellant complains that the·court's charge on circumstantial evidence
was not sufficient, and he asked one in lieu thereof, which was not given,
and he saved his bill of exceptions.   In our opinion, the charge given
by the court was correct, and not that asked by the defendant.   But
this was not a case calling for a charge upon circumstantial evidence, as
the testimony was of a positive character.   The appellant complains of
the action and remarks of J. J. Swan, private counsel in the case, who
closed the argument for the State.   Among other things; said Swan, in
his argument, referring to the personal appearance, dress, and calling of
the defendant, then walked up.to him, and shook his finger in his face,

and, in the presence of the court and jury, said: "You, the scoundrel, the villain, brute, and seducer that you are, would not only rob an innocent girl of her virtue, but would go further, and slander her poor old mother, and the penitentiary is too good for you." The bill of exceptions shows that the defendant then and there asked the court to admonish counsel to keep within the record, and not indulge in such character of argument, and also requested the court to charge the jury not to consider the same; but the court refused so to do, and directed counsel to proceed with his argument, ignoring the objection and exception thus raised by the defendant. It also appears that the said counsel, in his argument, among other things, stated to the jury, "that the defendant, with his white cravat, white shirt, and standing collar, is a professor, and you, gentlemen of the jury, are taxed and have to go down in your pockets for your hard-earned money to pay the salary of this dude professor, to debauch and ruin young girls." The appellant also excepted to these remarks, and asked that the same be withdrawn from the jury. The court at this time directed the counsel to keep within the record. As to the first remarks above quoted, as shown by the bill of exceptions, it appears that the appellant did all that was required of him, under the decisions of this court, in order to avail himself of the improper action of the counsel representing the State. He asked that counsel be admonished; that the remarks be withdrawn from the jury; and that the court eliminate their effect by a charge to the jury. The court, instead of doing this, entirely ignored the request of the appellant. It further appears that, in the same closing argument, said counsel used the following language: "If it had been you or I, gentlemen of the jury, or any other white man, we would have seized a shotgun, and at the first opportunity filled this defendant with buckshot, and that is what Bob Alexander would have done if he had had the opportunity that night his wife told him about it, and when he put those cartridges in his gun. And I want to tell you right here that, if Bob Alexander had shot him down on the spot, there is no jury in Falls County that would have harmed or convicted him." "Yes, gentlemen of the jury, the reason and cause of the loose morals among the race to which defendant belongs is that white jurors continue to turn loose black devils like the defendant." As to these remarks, the bill shows that counsel was not admonished or rebuked by the court, and that no bill of exception was taken by the defendant at the time to the said remarks, but a bill was reserved thereto afterwards. It may be that this course was pursued by defendant because the previous action of the court was such that he despaired of invoking the power of the court in restraining counsel, and was apprehensive lest repeated objections on his part might serve to injure the cause of the appellant with the jury. But as to the first remarks made by counsel, as stated before, appellant did all in regard thereto that he was required to do in accordance with the decisions of this court on the subject; and we are confronted with the question: Were these remarks of such a character as, under the circumstances of

this case, were calculated to inflame the prejudice of the jury against the defendant? It is always within the province of counsel, for either the State or the defendant, to fully cover all the field authorized by the testimony elicited on the trial, and to draw therefrom all legitimate deductions, and to explain the same with argument and illustration; and we would not be understood as in any wise placing a limit to legitimate and proper argument to be indulged in by counsel, either for the State or the defendant. There are barriers, however, that cannot be passed; and when it is made to appear to us that remarks have been used outside the evidence in the case, especially of a denunciatory character, such as are calculated to inflame the minds of the jury against the defendant, and more especially when it is shown that these remarks were used in the closing argument, with no opportunity to reply on the part of the defendant, so abused, it is the duty of this court to interfere.

There was testimony for the State in this case which, if the jury believed it, might authorize them to find the defendant guilty of the offense charged. On the other hand, there was testimony which, if they were inclined to credit it, would have demanded an acquittal. In such a case, when the scales might appear to the jury very evenly balanced, for the State's counsel, with the weight of his influence and character before the jury, with the finger of scorn pointed at the defendant, to denounce him as a scoundrel, a villain, a brute, a seducer, and then to describe him as a "dude professor," with a white shirt, cravat, and standing collar, and then to state to the jury "that you are taxed and have to go down in your pockets for your hard-earned money to pay the salary of this dude professor, to debauch and ruin young girls," was language not in evidence anywhere in the record in this case—a personal denunciation on the part of the counsel, which was not justified or authorized, and was calculated to produce in the minds of the jury the impression that the defendant was all that said denunciations implied. And for these remarks, when called to the attention of the court, to go unrebuked, was equivalent to saying to the jury that they were authorized, and, in our opinion, they were such as were well calculated to inflame the minds of the jury, and prejudice the defendant's rights. Because of these remarks, which were permitted over the objections of the defendant, the judgment in this case must be reversed, and the cause remanded; and it is accordingly so ordered.

*Reversed and Remanded.*