## JOHN LEE BERRY v. THE STATE.

### No. 423. Decided February 16, 1910.

**1.—Sodomy—Evidence—Confessions—Charge of Court.**

Where, upon trial for sodomy, the court admitted in evidence the written confessions of the defendant over his objections, on the ground that they were not voluntarily made, and the insufficient mental capacity of the defendant, the court should have fully charged upon all the phases of this evidence, and where he failed pertinently to instruct the jury upon this matter, the same was error.

**2.—Same—Charge of Court—Insanity.**

Where, upon trial for sodomy, there was evidence that the defendant was not of sound mind at the time of the alleged offense, the court should have submitted a charge upon this issue, as requested. Following Pettigrew v. State, 12 Texas Crim. App., 225, and other cases.

Appeal from the District Court of Taylor. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of sodomy; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*C. H. Fulwiler* and *Geo. B. Hill,* for appellant.—Cited cases in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of sodomy, his punishment being assessed at five years confinement in the penitentiary.

The State's case is made out by several witnesses who testified they saw what they considered the act between appellant and a cow mentioned at a distance of three or four hundred yards. Appellant was arrested by the officers and asked a great many questions with a view of securing a confession, they telling him that it would be better for him and that he would get off lighter with punishment if he would confess. Appellant had been previously convicted of being drunk and fined $10.70, and he told them he was willing to plead guilty for $10.70, that he could work it out in two weeks. Finally the officers secured a confession, whereupon appellant was placed in jail, and the district attorney notified. He went to appellant's cell in the jail and secured from him a written confession. The district attorney says he explained to appellant the meaning of the language employed in the written confession. Appellant is an unlearned and illiterate negro, and some of the testimony shows that he is crazy to the extent that he did not know the difference between right and wrong, or the nature of the act with which he was charged. Without going into a detailed statement of the reasons why the confession was sought to be excluded as testimony, it may be stated in a general way that under the cir-

cumstances the confession was admissible. A confession under similar circumstances to those detailed in bill of exceptions here was discussed in Gallaher v. State, 40 Texas Crim. Rep., 296. While in that case the confession was not excluded, yet the trial court was instructed that in another trial the charge must clearly instruct the jury as to their duty in considering the same or rejecting it. Upon another trial if it is sought to introduce this confession, the court's charge must pertinently instruct the jury under what circumstances they may or may not consider it. The court in his general charge failed to instruct the jury in regard to the circumstances under which this confession could be considered. The court gave a short charge asked by appellant in regard to the matter, but that charge did not cover all the phases of the evidence introduced for and against the admission of the confession, and did not relate to his mental capacity or competency as a witness.

There is another phase of this matter to which we call attention, and that is the insanity of appellant. This also was the subject of investigation in connection with the introduction of the confession. The sheriff testified on this subject that he did not think or believe appellant knew right from wrong or the nature of the act, etc., of which he was charged. It is shown that he was an illiterate negro, could not read or write, did not understand the use of the terms employed in the conversation and in the confession itself, and the district attorney testified he had to explain to him all of those terms used in the confession. For instance, it is shown, among other things, as illustrative of the want of intelligence of appellant; that he did not know what "male" and "female organ" meant. In fact, he is shown to be a very ignorant negro, half-witted, and, as some of the witnesses say, was known under the nickname of "Crazy John." This seems to have been given him by reason of the fact that they considered him a fool, and one witness goes to the extent of saying a certain lady would not employ him or let him stay about the house because he was crazy. These matters were before the court, much of the evidence being introduced as preliminary to introducing the confession, and some of it on the main trial. Our statute provides that a party who is insane can not be a witness in a case. Of course, if the party has not sufficient reason to be a witness in the case, the statement of such party could not be used as evidence. Upon another trial, therefore, the jury should be very fully instructed in regard to the admission of this confession, if it is sought to be used.

The court did not charge the jury with reference to appellant's insanity. We believe an instruction should have been given on this issue. The exception to the failure of the court to do so is well taken, as well as the exception to the refusal of the court to give the special requested instructions on this subject. Speaking of this, the witness Maxwell said: "I know a part of his general reputation as to his intelligence and his knowledge of right and wrong." He further says: "As to

the crime he is charged with, I do not think he knows right from wrong. I just know him to be about a half—what I would call a big, old, ignorant boy. I always considered him to be half-witted. I have heard other people say so too. The boys call him 'Crazy John.' He works around at times, but they generally run him off about the first or the second day. He worked for Mrs. Winniford. I told him when he went there that Mrs. Winniford would run him off before supper, and he asked me why, and I told him he didn't have sense enough to do anything, and the next morning he told me to get another boy, and I asked him why, and he says that boy won't do; he is crazy." The sheriff, Mr. Weir, testifies: "I do not think this negro understood the nature of the crime he was charged with committing." We are of opinion that there are other matters in the record pretty much of the same character, showing that appellant was considered a sort of a fool, half-witted and hardly a responsible creature. Under these circumstances and environments of the case we are of opinion the court should have given the requested instructions submitting the issue of insanity. By the testimony the issue was raised and required a charge upon it favorable to the accused. Pettigrew v. State, 12 Texas Crim. App., 225; Burkhard v. State, 18 Texas Crim. App., 599; Massengale v. State, 24 Texas Crim. App., 181. The authorities are overwhelming that wherever an issue is suggested by the testimony which is favorable to the accused, a charge submitting the law of that issue must be given. This was called to the court's attention directly by two special charges, both of which the court refused to give.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*