## HOGUE v. STATE.

(Court of Criminal Appeals of Texas. March 13, 1912. Rehearing Denied May 1, 1912.)

1. CRIMINAL LAW (§ 595*)—TRIAL—GROUNDS FOR CONTINUANCE.

A continuance will not be granted to enable defendant to procure absent witnesses to testify to defendant's general reputation for veracity and peacefulness.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1311, 1323–1327; Dec. Dig. § 595.*]

2. CRIMINAL LAW (§ 1166*)—APPEAL—OVERRULING APPLICATION FOR CONTINUANCE.

Defendant, on trial for assault to murder, applied for a continuance on the ground that he expected to prove by absent witnesses particular facts showing an impairment of his nervous system, and that such testimony was material to his intended plea of insanity, and would be the basis for hypothetical questions to experts; but the father of defendant was present and testified as to all the facts defendant expected to prove by the absent witnesses, and no hypothetical question based on his testimony was put to either of four physicians called by defendant, and one physician answering a question in regard to defendant's nervous condition said that he knew right from wrong, and had sufficient intelligence to know that it was wrong to make an assault with a knife. *Held,* that the trial court did not err in overruling the application for continuance.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3100–3102, 3107–3113; Dec. Dig. § 1166.*]

3. CRIMINAL LAW (§ 48*)—CAPACITY TO COMMIT CRIME—UNSOUNDNESS OF MIND.

Under the statute a person of unsound mind, incapable of knowing and understanding his acts to be wrong, is not liable to any punishment; but if a person has sufficient intelligence to know right from wrong, he is legally responsible for his acts; and a person with a mind below normal, if guilty, will not, on that account, be punished for a lower grade of offense than a person of normal mind.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 53–58; Dec. Dig. § 48.*]

4. CRIMINAL LAW (§ 50*)—CAPACITY TO COMMIT CRIME—IRRESISTIBLE IMPULSE.

The doctrine of irresistible and uncontrollable impulse as a mitigation or defense for crime is not recognized in the courts of this state.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 62–64; Dec. Dig. § 50.*]

5. HOMICIDE (§ 300*)—TRIAL—INSTRUCTIONS—SELF-DEFENSE.

Where there was evidence, in a prosecution for assault to kill, that the person assaulted made an assault on defendant, slipping his hand down toward his hip pocket, that he struck at defendant, and as defendant stepped back kept on coming, and that during the difficulty defendant had his hands cut, a charge that defendant might act in defense of himself, if the other person had made an attack on him which caused him to have fear of death or severe bodily injury, and that if such other person was armed at the time the law would presume that he intended to inflict serious bodily injury, was properly given.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 614, 616–620, 622–630; Dec. Dig. § 300.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**6. HOMICIDE (§ 300*)—TRIAL—INSTRUCTIONS —PROVOCATION OF ASSAULT.**

In a prosecution for assault to murder, where there was evidence that defendant, armed with a dirk and a pistol, sought a meeting with the person assaulted and brought up a subject about which they had differed, and on a new disagreement called such person a liar, drove him out of his store, following him, and threatened to shoot him, and inflicted a nearly fatal wound with the dirk, a charge, that defendant would not be justified in his conduct if the jury believed that he sought the person assaulted for the purpose of provoking a difficulty with the intent to take his life, was properly given.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 614, 616–620, 622–630; Dec. Dig. § 300.*]

**7. CRIMINAL LAW (§ 1064*) — APPEAL — MOTION FOR NEW TRIAL—ASSIGNMENTS OF ERROR—SUFFICIENCY.**

Assignments of error in a motion for a new trial "because the court erred in each and every paragraph of his general charge beginning with paragraph 6 and ending with paragraph 12, as said paragraphs did not present the law applicable to the facts proven on the trial," and "because the court erred in failing to instruct the jury in his general charge all the law applicable to the issues involving the case," are too general to be considered.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2676–2684; Dec. Dig. § 1064.*]

**8. CRIMINAL LAW (§ 1064*) — APPEAL — MOTION FOR NEW TRIAL—SPECIFICATION OF ERRORS.**

Where there are no bills of exceptions reserved to the charge of the court, any error must be pointed out by a motion for new trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2676–2684; Dec. Dig. § 1064.*]

**9. HOMICIDE (§ 315*)—VERDICT — CONSTRUCTION AND OPERATION.**

A finding, in a prosecution for assault to kill, that defendant was guilty of aggravated assault only, implies a finding that, while the injuries were inflicted under sudden passion arising from an adequate cause, they were not justified in law, and hence is conclusive against the issue of insanity.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 679–682; Dec. Dig. § 315.*]

**10. CRIMINAL LAW (§ 829*) — TRIAL — REQUESTED INSTRUCTIONS—REFUSAL.**

Requested instructions covered by the main charge, in so far as they presented the law applicable to the case, are properly refused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. § 829.*]

**11. HOMICIDE (§ 340*)—APPEAL — HARMLESS ERROR—INSTRUCTIONS CURED BY VERDICT.**

In a prosecution for assault to kill, instructions drawing a distinction between assault to kill and aggravated assault present no error after conviction of aggravated assault only.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 715–717, 720; Dec. Dig. § 340.*]

**12. HOMICIDE (§ 310*)—EVIDENCE—AGGRAVATED OR SIMPLE ASSAULT.**

In a prosecution for assault to kill, where it appeared that the assault was made with a dirk, the blade being 5½ inches long from guard to the point, sharp on both edges, and about three-fourths of an inch in width, tapering to a point, and a dangerous wound was made under the shoulder blade puncturing the lung tissue, the issue of simple assault was not presented.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 657–661; Dec. Dig. § 310.*]

**13. CRIMINAL LAW (§ 1054*)—APPEAL — NECESSITY OF BILL OF EXCEPTIONS.**

An objection to the admission of evidence cannot be considered, where no bill of exceptions thereto is reserved.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2662–2664; Dec. Dig. § 1054.*]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

R. S. Hogue was convicted of aggravated assault, and he appeals. Affirmed.

Charles F. Clint and Tatum & Tatum, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was indicted, charged with assault to murder. He was convicted of the offense of aggravated assault, and his punishment assessed at two years' confinement in the county jail.

It appears that appellant was sick with a cold or bronchial affection, and called in Dr. J. W. Hale. Dr. Hale prescribed for him, and in a few days thereafter appellant wrote him a note, which the doctor deemed insulting, and he refused to prescribe further. When appellant got well he met the doctor in the post office in the town of Dumas. The doctor spoke to him, when appellant informed him that he would shortly pay his bill, when he did not want the doctor to speak to him again. Later in the day, appellant was in Dr. Hale's drug store, and some words passed between them about the contents of the note, which the doctor had returned to appellant; the doctor stating certain language was in the note, which appellant denied. The doctor then stated if such language was not in the note he would apologize to appellant for his conduct. Four or five days later appellant again came to town and asked Dr. Anthony and Mr. Garrett to go to the drug store with him. When they all got in the drug store, he produced the note, and asked Dr. Hale to read it. When he had done so, appellant insisted that the language Dr. Hale had said was in the note was not contained therein. Dr. Hale stated it was there in substance, and declined to apologize, but agreed to let Dr. Anthony and Mr. Garrett see the note, and if they said it was not insulting to a physician he would apologize. Appellant stated that was not the agreement; the agreement was, if the language stated by Dr. Hale was not in the note, he was to apologize, and if he did not do so he (Hale) was a liar. Dr. Hale ordered him out of his drug store. Appellant again called him a liar, when Dr. Hale stepped towards him. Appellant drew a dirk knife and cut or cut at Dr. Hale, when Dr. Hale backed out of his drug store; appel-

lant following him. Getting outside of the drug store, Dr. Hale ran around the side of the store; appellant cutting him in the back with the dirk, penetrating his lung. Dr. Hale ran by a plank and picked it up, when appellant shoved him over and got on him. Hale grabbed the right arm of appellant, he having the dirk in that hand, when others interfered and separated them. Mr. Garrett, Dr. Anthony, and several others testify that Dr. Hale made no assault on appellant, but that appellant assaulted Dr. Hale, when he ordered appellant out of his store; that Hale had nothing, backed off and ran, appellant running after him. Dr. Hale was stabbed in the back, was cut on the cheek, and the sleeve of his coat cut. Appellant's daughter, Miss Vashti Hogue, testified that Dr. Hale ordered her father out of his drug store, slipped his hand down toward his hip pocket, and put his hand in his shirt and rushed towards her father, and struck at appellant, when appellant drew his knife; that her father had blood on him, and he had his left hand cut across the knuckle; that the ball of his thumb was split open and right forefinger cut across. She is the only witness who testifies to Dr. Hale committing any overt act.

[1] 1. When the case was called for trial, appellant filed an application for a continuance on account of the absence of several witnesses. By all of them, except two, he stated he expected to prove his general reputation for truth and veracity, and peace and quietude. This fact was sworn to by a number of witnesses on the trial; the state introducing no witness on this issue. It is the rule that a continuance will not be granted to prove reputation in these respects. Parks v. State, 35 Tex. Cr. R. 378, 33 S. W. 872, and cases collated in section 611 of White's Code of Crim. Proc.

[2] By the witness W. J. Hogue he states he expected to prove that he (appellant) was in the habit of carrying arms because he believed he was in peril at the hands of an assassin; that on two separate occasions in his youth appellant was seriously injured in his head by kicks from animals, and on another occasion became seriously overheated; that defendant is easily shocked, gets beyond himself, and is incapable of cool reflection, and at such times is incapable of knowing right from wrong. By the witness Mrs. M. A. Jackson he states he expects to prove that his mother, a short time before appellant's birth, was attacked by a lunatic and her nervous system seriously and permanently injured, and this caused the nervous system of appellant from his youth up to be more or less impaired. That one of defendant's pleas will be insanity, and this testimony is material, and will be the basis for hypothetical questions to be submitted to expert physicians who are present to testify. The father of the injured party was present and testified to all the facts he states he expected to prove by these witnesses, and the hypothetical questions could have been based on his testimony. In passing on the questions of whether the court erred in overruling the application for continuance, we must do so in the light of the testimony adduced on the trial of the case, and when we find in the record all the facts testified to by a witness in attendance on court which defendant states he expected to form the predicate for hypothetical questions, and only one physician asked any question in regard to the matter, and this witness testifying that appellant knew right from wrong, and had sufficient intelligence to know that it was wrong to make an assault of the character made in this case, we conclude that the court did not err in overruling the application for a continuance. Three other physicians were placed on the witness stand by appellant who had known him for many years, and who testified that his reputation was that of a good citizen, but to none of them was the hypothetical question propounded, nor was it sought to prove by them any fact or circumstance which would tend to show that appellant should not be held responsible for his acts.

[3, 4] This court has never recognized the doctrine that a person with a mind below normal should be punished for a lower grade of offense if found guilty than a person of normal mind. The only relief offered any person of unsound mind under our statute and practice is that if such person is incapable of knowing and understanding the act, when committed, to be a wrong, he is not susceptible to any punishment. It would be a strange principle indeed if the courts were permitted to speculate as to the degree of intelligence existing in the minds of persons charged with crime, unless some limitation or point was reached where culpability ceased, and when that point was reached he was not culpable. Our courts have never recognized the doctrine of irresistible and uncontrollable impulse as a mitigation or defense for crime. Evidence may be introduced for the purpose of showing defendant's state of mind, as establishing his intent and fixing the grade of the offense; but if a person has sufficient intelligence to know right from wrong he is legally responsible for his acts.

2. Appellant complains of the ninth and tenth paragraphs of the court's charge. These paragraphs read as follows:

"(9) A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time; and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the

necessity of assaulting his assailant. If from the evidence you believe the defendant, R. S. Hogue, inflicted injury upon said J. W. Hale, but further believe that at the time of so doing J. W. Hale had made an attack on him which caused him to have a reasonable expectation or fear of death or serious bodily injury, and that, acting under such reasonable expectation or fear, the defendant stabbed the said J. W. Hale, then you should acquit him; and if the said J. W. Hale was armed at the time he was assaulted and injured, and was making such attack on the defendant, and if the weapon used by him (J. W. Hale) and the manner of its use was such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the said J. W. Hale intended to inflict serious bodily injury upon the defendant.

"(10) You are further instructed that if at the time of said alleged assault, if any, that the defendant from the acts of the said J. W. Hale, if any, or if from his words coupled with his acts, if any, there was created in the mind of the defendant a reasonable apprehension that he was in danger of losing his life or of suffering serious bodily harm at the hands of the said J. W. Hale, then he had the right to defend himself from such danger, or apparent danger, as it then appeared to him (defendant). And if you believe that defendant stabbed or assaulted said J. W. Hale as a means of defense, believing at the time he did so, if he did so do, that he was in danger of losing his life or of suffering serious bodily injury at the hands of said J. W. Hale, then you will acquit him, unless you believe from the evidence beyond a reasonable doubt that the defendant sought a meeting with said J. W. Hale for the purpose of provoking a difficulty with said J. W. Hale with the intent to take the life of said J. W. Hale, or to do him such serious bodily injury as might end in the death of said J. W. Hale. And if you so believe from the evidence beyond a reasonable doubt, then you are instructed he would not be able to justify on the ground that he acted in self-defense; but if he had no such intentions in seeking to meet the said J. W. Hale, then his right of self-defense would not be forfeited, and he could stand his ground and use such means of defense as seemed to him necessary to protect himself from danger or what appeared to him to be danger."

[5] The objection to paragraph 9 is that it limits the defendant's right of self-defense, alleging it does not give the defendant the right to protect himself unless the jury found that Dr. Hale was armed at the time he was assaulted. If the criticism had any foundation in the paragraph, it might be well taken; but one who reads that paragraph, copied above, will see at once it has no foundation. The charge authorized de-

fendant to act in defense of himself if Dr. Hale had made an attack on him which caused him to have a fear of death or serious bodily injury, and then instructed them if Dr. Hale was armed at the time the law would presume that he intended to inflict serious bodily injury. This charge was not improper under the evidence of Miss Vashti Hogue, who testified that Dr. Hale made an assault on her father, "slipping his hand down toward his hip pocket"; that he struck at her father, and as he did so her father stepped back; that the doctor kept on coming, and during the difficulty her father had his left hand cut across the knuckle, the ball of the thumb being split open, his right forefinger being also cut. Had the court not charged the substance of article 676 (Pen. Code 1895), defendant would doubtless have complained of his failure to do so under this evidence.

[6] 3. Appellant complains of that part of paragraph 10 in which the court instructs the jury that defendant would not be justified in his conduct if the jury believed that defendant sought Dr. Hale for the purpose of provoking a difficulty with the intent to take the life of Dr. Hale, insisting there is no evidence upon which to predicate such charge. At the time defendant sought this meeting, the evidence shows, beyond controversy, that he was armed with a dirk and a pistol; the pistol being taken off of him when arrested. When he went in to see Dr. Hale, he brought up a subject about which they had previously had words, and when they again disagreed, he called Dr. Hale a liar (the state's testimony would show) at this time drawing the dirk, cutting or cutting at Dr. Hale with it, he pursuing him, and following him until he had inflicted what the doctors say was very near a fatal wound, the dirk penetrating the lung. It also shows that, as Dr. Hale ran, appellant remarked: "Run! You son of b——h! Or I will shoot hell out of you." This sufficiently raised the issue for the court to charge thereon, and it will be seen, by reference to the charge, the court instructed the jury, if he had no such intention in seeking the meeting, his right of self-defense would not be impaired, and defendant could stand his ground and use such means as seemed to him necessary to protect himself from danger, or what appeared to him to be danger. Neither of the paragraphs are subject to the criticisms contained in appellant's motion.

[7, 8] 4. Those paragraphs in the motion which read as follows: "Because the court erred in each and every paragraph of his general charge, beginning with paragraph 6 and ending with paragraph 12, as said paragraphs did not present the law applicable to the facts proven on the trial." "Because the court erred in failing to instruct the jury in his general charge all the law applicable to the issues involved in the case." And

similar paragraphs—are too general to be considered, and the errors assigned thereunder in this court cannot be considered. Where there are no bills of exception reserved to the charge of the court, the motion for new trial must point out the error, if error there be. Quintana v. State, 29 Tex. App. 401, 16 S. W. 258, 25 Am. St. Rep. 730, and Ryan v. State, 142 S. W. 878, and authorities cited in those cases.

[9] 5. There was no error in the court not submitting the issue of insanity, because the evidence and all the evidence proves that defendant was in a condition of mind to know right from wrong, and to know it was wrong to assault a person with a dirk, and if he was of a "nervous temperament, easily excited, which rendered him incapable of cool reflection," the jury, in finding appellant guilty of aggravated assault only, must have found that the injuries were inflicted under sudden passion arising from an adequate cause, but not justified in law. All those grounds in the motion which seek to raise this issue or similar ones pass out, as the defendant was acquitted of assault to murder.

[10-12] 6. The court gave four of the special charges requested by appellant, and all the others, in so far as they presented the law applicable to this case, were covered in the main charge of the court. As hereinbefore stated, those that sought to draw the distinction between assault to murder and aggravated assault present no error; the defendant being convicted of aggravated assault only. The facts do not present the issue of simple assault, as the assault was made with a dirk; the blade being 5½ inches long from guard to the point, sharp on both edges, and about three-quarters of an inch in width, tapering to a point. The wound inflicted, Dr. Owens testified, was about 3 inches below the left shoulder blade, entering between the sixth and seventh ribs, passing through the pleura lining of the chest wall, and puncturing the pleura covering of the lung tissue, making a lacerating wound, a wound which he considered a dangerous wound.

[13] 7. We cannot consider that ground in the motion objecting to the testimony of O. E. Gober. If objection was made, no bill of exceptions was reserved.

The judgment is affirmed.