Ernest Rufus FULLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 40973.

Court of Criminal Appeals of Texas.

Feb. 7, 1968.

Grady Hight, Fort Worth, (on appeal) for appellant.

Frank Coffey, Dist. Atty., Truman Power and Roland H. Hill, Jr., Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Murder with Malice; the punishment assessed by the court after a verdict of guilty by the jury, ten (10) years confinement in the Texas Department of Corrections.

The indictment charged the appellant with shooting and killing his wife on March 27, 1954. Appellant's trial commenced on December 13, 1966. The record reflects that on December 15, 1954, in a separate sanity hearing, a jury determined that appellant was insane at that time but was sane at the time of the commission of the offense. It appears from appellant's own testimony that he was committed to the Rusk State Hospital and was restored at a hearing before a jury the day before his trial on the merits.

Initially, appellant urges that the trial court fundamentally erred in failing to charge the jury on the defense of appellant's insanity at the time of the commission of the offense.

Every person is presumed to be sane (in absence of an unvacated judgment of insanity) and to have sufficient judgment and reason to be responsible for his acts until the contrary is established. It is by reason of this presumption that the law casts upon one relying on insanity as a defense to a crime the burden of establishing by a preponderance of the evidence that his intellect was so disordered that he did not know the nature and quality of the act he was doing, or if he did know that he was unable to distinguish between the right and wrong as to the particular act charged. Wenck v. State, 156 Tex.Cr.R. 50, 238 S. W.2d 793; Ross v. State, 153 Tex.Cr.R. 312, 220 S.W.2d 137; Ex parte McKenzie, 116 Tex.Cr.R. 144, 28 S.W.2d 133; McCaine v. State, Tex.Cr.App., 211 S.W.2d 190; Simpson v. State, 163 Tex.Cr.R. 385, 291 S.W.2d 341; Freeman v. State, 166 Tex.Cr.R. 626, 317 S.W.2d 726.

Therefore, mere mental deficiency or derangement, though it may constitute a form of insanity known to and recognized by medical science, does not excuse one for crime. McGee v. State, 155 Tex.Cr.R. 639, 238 S.W.2d 707; Ross v. State, supra. See McCune v. State, 156 Tex.Cr.R. 207, 240 S.W.2d 305 (mere feeble-mindedness short of legal insanity is not a defense to crime);

Martinez v. State, 169 Tex.Cr.R. 229, 333 S.W.2d 370.

■ Since the issue of insanity at the time of the commission of the offense is primarily a defensive one, it ordinarily should be raised during the course of the trial. If such issue is properly raised by competent evidence, the court should charge thereon, Article 46.02, Sec. 2(c) (1), Vernon's Ann.C.C.P.; Berry v. State, 58 Tex. Cr.R. 291, 125 S.W. 580, and under such circumstances reversal will follow if the court fails to respond to a timely presented written objection or requested charge. See Stoner v. State, 100 Tex.Cr.R. 16, 271 S.W. 616.

■ If, however, the issue of insanity at the time of the offense is not raised by the evidence, the trial court does not err in failing to instruct the jury upon the law of insanity as a defense. Morris v. State, Tex. Cr.App., 382 S.W.2d 259; Williams v. State, 170 Tex.Cr.R. 595, 343 S.W.2d 263; Cook v. State, 71 Tex.Cr.R. 532, 160 S.W. 465; Leeper v. State, 29 Tex.App. 63, 14 S.W. 398.

It is noted that the rules of evidence known to the common law as to the proof of insanity are to be observed in all trials where the issue is raised. Article 35, Vernon's Ann.P.C.

■ Therefore, insanity cannot be proved by general reputation. Article 35, supra, Note 5. Further, mere proof that an accused was not bright or was of weak mind does not raise the issue of insanity. Kirby v. State, 49 Tex.Cr.R. 517, 93 S.W. 1030; Coffey v. State, 60 Tex.Cr.R. 73, 131 S.W. 216; Hogue v. State, 65 Tex.Cr. R. 539, 146 S.W. 905; Craven v. State, 93 Tex.Cr.R. 328, 247 S.W. 515; Banks v. State, 133 Tex.Cr.R. 541, 112 S.W.2d 745.

In a number of cases this Court has held that the evidence was insufficient to raise the defense of insanity and that the trial court did not err in refusing to charge thereon over the timely presented objection or special requested charge of the defendant. Salter v. State, 159 Tex.Cr.R. 482, 264 S.W.2d 719 (habitual drunkard and drinking); Lyles v. State, 91 Tex.Cr.R. 400, 239 S.W. 616 (habitual user of morphine); Powell v. State, 37 Tex. 348 (low intellect); Mitchell v. State, 52 Tex.Cr.R. 37, 106 S.W. 124 (congenital mental incapacity). See also Yeager v. State, 109 Tex.Cr.R. 213, 3 S.W.2d 808; Steele v. State, 130 Tex.Cr. R. 198, 93 S.W.2d 150.

In the case at bar appellant offered no medical testimony, and only he and his brother testified as defense witnesses. While there was testimony as to appellant's medical discharge from the military service due to some undisclosed "mental illness * * * from * * * nerves," his "blackouts,"[1] and a lengthy confinement in Rusk State Hospital beginning almost 9 months after the alleged offense, as well as to his restoration the day before the trial, neither appellant nor his brother testified that he was insane or of unsound mind on the date of the offense charged, or that at such time he was not capable of understanding right from wrong.

It is obvious that the trial judge did not consider the evidence sufficient to charge the jury on the issue. In fact in a qualification to one of appellant's bills of exception the trial judge so certifies.

Article 46.02, Sec. 2(c), supra, provides in part:

"When the issue of insanity as of the time of the alleged offense is tried, the following rules shall apply:

"(1) The issue of insanity as of the time of the alleged offense shall be sub-

1. "Blackout" was a term utilized by appellant's attorney. It did not connote lack of physical mobility or unconsciousness. The evidence reflects that immediately after the shooting appellant was seen driving his car, walking, scuffling with the police, and making the admission to a neighbor that he had just killed his wife.

mitted *only* if supported by competent evidence tending to show that defendant was insane as of the time of the alleged offense." (Emphasis Supplied)

█ If it be appellant's contention that there was competent evidence raising the issue of insanity as a defense, then it was incumbent upon him to timely object to the court's charge or present to the court a special requested charge as required by Articles 36.14 and 36.15, V.A.C.C.P. This he failed to do, so in absence of a showing of fundamental error, this ground of error is not before us for review.[2]

We observe that this complaint as to the trial judge's action was not registered until this ground of error was assigned in the appellate brief filed in the trial court by court appointed counsel on appeal.

█ We have further concluded that the failure of appellant's court appointed counsel to object to the court's charge or to request a charge on the issue of insanity did not deprive him of the effective assistance of counsel.

Appellant does not complain on appeal that his trial counsel was ineffective because he did not plead insanity as a defense, nor that he failed to present available and competent testimony raising the defense of insanity.[3] His narrowly presented contention rests solely on trial counsel's failure to request a charge on the issue of insanity at the time of the commission of the alleged offense as shown by the evidence presented in the case.

The test to be applied under such circumstances has been well stated by the

United States Court of Appeals, Fifth Circuit, in MacKenna v. Ellis, 280 F.2d 592:

"We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance."

See also Caraway v. State, Tex.Cr.App., 417 S.W.2d 159; Ex parte Larkin, Tex.Cr. App., 420 S.W.2d 958.

In Williams v. Beto, 354 F.2d 698, the Fifth Circuit Court of Appeals said:

"The practice of law is an art as well as a science. As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight."

In Caraway v. State, supra, this Court further remarked:

"An accused has a constitutional right to the effective assistance of counsel and our entire judicial system should always jealously safeguard that precious right. At the same time, in view of the great frequency with which lack of assistance of counsel is being raised on appeals and in collateral attacks upon convictions, each case must be carefully scrutinized on its merits and in light of the record available, so as not to leave the impression with defense counsel that in seemingly hopeless cases, the best defense or delaying tactic is to do nothing at all."

In light of appellant's ground of error as framed, the evidence before us, including

---

2. Insanity as a defense is not to be confused with the issue of present insanity (insanity at the time of the trial) as was before the court in Pate v. Robinson, 383 U.S. 375, 15 L.Ed.2d 815, 86 S.Ct. 836.

3. There is no claim that appellant's court appointed trial counsel knew of a psychi-

atrist at Rusk State Hospital or anywhere else or of any other witness who would have testified that appellant was legally insane on March 27, 1954, and that he failed to call such witness or make the proper investigation in connection therewith.

a showing that subsequently to the offense charged the appellant was found sane at the time of the commission of the offense by a jury, we overrule appellant's ground of error that he was deprived of effective assistance of counsel by the failure to request a charge on the defense of insanity. Even if such a requested charge had been presented, we conclude that the trial court, under the record, would not have erred in refusing the same. Williams v. State, 170 Tex.Cr.R. 595, 343 S.W.2d 263; Morris v. State, Tex.Cr.App., 382 S.W.2d 259.

Appellant finally asserts as a ground for reversal that the trial court erred in refusing to permit appellant's brother to expound his opinion as to the mental condition of the appellant at or about the time of the killing of appellant's wife.

The action of the trial court complained of is reflected in the transcription of the court reporter's notes as follows:

"Q. I will ask you prior to March 27, 1954, when was the last time you saw Ernest, prior to that date, if you can recall?

"A. I believe it was about a week before, if I'm not mistaken.

"Q. Could you tell the jury, if you can recall, what his mental condition was, his outlook, his actions along in those days?

"A. It seemed that he was—

"MR. HILL: Just a minute. If it please the Court, we would like to object to that question. It is vague and indefinite. The skope (sic) is too broad for this man to understand the question. We feel it is also irrelevant and immaterial.

BY MR. MILLER:

"Q. I will ask you, after March 27, 1954, when was the next time you saw Ernest?

"A. About a week.

"Q. Where was he when you saw him at that time?

"A. In the County Jail.

"Q. Here in Fort Worth?

"A. Yes, sir.

"Q. Would you tell the jury on that particular occasion, your first meeting, what his condition was; how he acted and how he looked to you?

"MR. HILL: Same objection, if it please the Court.

"THE COURT: I will permit him to answer the last part of the question as to how he looked, but what his condition was—

BY MR. MILLER:

"Q. How did he look?

"A. He looked as though he was in a stupor—blank. •Didn't recognize or nothing."

It is observed that the court made only one ruling permitting the witness to relate how the appellant looked, and the remainder of his ruling was interrupted with continued interrogation by appellant's counsel. No objection to the court's action was taken, and there is no showing in the record that appellant's brother saw and observed him on the date of the alleged offense.

■ It is well established in Texas that evidence of the state of mind of a defendant, both before and after the act charged, is admissible. Webb v. State, 5 Tex.App. 596; Warren v. State, 9 Tex.App. 619; Cannon v. State, 41 Tex.Cr.R. 467, 56 S. W. 351; Lane v. State, 59 Tex.Cr.R. 595, 129 S.W. 353.

■ It is also well settled that a properly qualified nonexpert witness may express an opinion whether the accused knows right from wrong. Kindle v. State, 162 Tex.Cr.R. 395, 285 S.W.2d 740; Stout v. State, 142 Tex.Cr.R. 537, 155 S.W.2d 374; Wenck v. State, supra.

■ Further, it is error to exclude opinion of a nonexpert witness as to the sanity of the defendant, where such witness has first stated the facts on which his opinion is based, and it appears that his opinion will be justified by his opportunities for observing the conduct of the defendant. 2 McCormick & Ray, Texas Law of Evidence 253, Sec. 1421, 2nd Ed.; Thomas v. State, 40 Tex. 60; Holcomb v. State, 41 Tex. 125; McClackey v. State, 5 Tex.App. 320; Webb v. State, supra; Carr v. State, 24 Tex.App. 562, 7 S.W. 328. Nonexpert witnesses testifying to the insanity of the accused must state the facts upon which that conclusion is based so that the jury may have the benefit of those facts in weighing the testimony of the witnesses. Ross v. State, supra.

■ Nonexpert witnesses, however, are confined to their opinions at the time of their observations of the accused person and cannot be allowed to project their opinion as to the mental condition of such accused at a future time. Ross v. State, supra.

In Ross v. State, supra, this Court said:

"The rule seems to be well established that a nonexpert witness may delineate his observation of an accused, his attitude, both mental and physical, as compared to his previous attitude, etc., and draw his general conclusion or opinion therefrom, but nowhere have we been able to find any opinion that would allow such nonexpert to say what such opinion would be at a future time such as at the commission of the offense, if such be at a different time from his observation. To allow such an opinion would invade the realm of experts who, from their knowledge, study, and long experience, could therefrom fix a prognosis of such diseased condition of the mind and prophesy its future probable outcome."

■ In view of the authorities cited, the record before us, the form of questions asked, the single ruling of the court, we hold the trial court did not prevent appellant's brother from testifying as to the mental status of the appellant at or about the time of the killing.

Finding no reversible error, the judgment is affirmed.