**Charles William GUYTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44087.**

Court of Criminal Appeals of Texas.

Sept. 16, 1971.

Rehearing Denied Nov. 9, 1971.

James Martin, Dallas, for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Harry J. Schulz, Jr., W. T. Westmoreland, Jr., Edgar A. Mason, Robert T. Baskett and James S. Moss, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for forgery, where the punishment, enhanced under the provisions of Article 63, Vernon's Ann.P.C., was assessed at life.

The indictment was presented on November 1, 1965, alleging that the primary offense had occurred "on or about" June 4, 1965. The trial commenced March 22, 1966. Judgment was entered the following day. The motion and amended motion for new trial were overruled by operation of law. For reasons unexplained, sentence was not pronounced until February 26, 1970. The record reached this court on March 26, 1971, over five years after the trial of this cause. The appellant, in view of the penalty, is not entitled to bail pending appeal and has remained in confinement.

The sole question presented on appeal is whether the trial judge fundamentally erred in failing to submit to the jury the issue of insanity *as a defense*, despite the lack of an objection or requested special charge.

There was no medical testimony offered during the trial on the merits, and nothing in the State's evidence served to raise the issue.

Frank Lott, an alibi witness for the defense and a sometime employer of the appellant, testified the appellant "was kind of nervous like, and so we, Daddy and I, had been working on him to get him to start going to church." He further related that his experience with the appellant did not give him any basis for believing the appellant was of unsound mind.

Ida Jean Webb, the appellant's daughter, testified he was under a "Guardianship, Texas Bank and Trust" "as a veteran" "as far as I know." She could not give any specific acts of abnormal behavior on the part of her father, but stated he had been in a veterans' hospital in Waco, which was "supposed to be for crazy people" although

she did not know how long he stayed there. She related that every time she had seen her father he had "acted allright" and "like he knows what he was doing."

Appellant's landlady, Gerthie Lee Tucker, did testify the appellant was not normal and was mentally sick. When asked to explain she replied, "Well, he just sometimes, the way he acts, his sickness, through his sickness, you know. He has asthma and he would be so sick sometimes he would fall out, and so I just don't think he's normal, you know." She mentioned appellant's guardianship, but when asked if she thought appellant knew the difference between right and wrong, she answered affirmatively.

Appellant testified in his own behalf. He related that he was forgetful, stating that "[s]ometimes I go to light a cigarette and get my matches and stick it to my mouth and there wouldn't even be a cigarette in my mouth." He revealed that on occasion he would forget to lock the front door of his apartment or leave the keys in the door or fail to latch the window screen.

When asked about his guardianship the 50 year old appellant replied, "My mother turned it over to them and put it in the Texas Bank and Trust, guardian over my money, because she said I was the type of person that wasn't, she carried it through probated court here, and I've been to Waco three times for treatments" "once for loss of memory and once for hearing voices and music in the walls."

On cross-examination he testified he was aware of the difference between right and wrong and knew it was wrong to forge instruments or steal property. He specifically testified he remembered the day of the alleged offense and revealed that he spent the day at his employer's house working on a fence. He recalled the date of his discharge from the military service, his prior convictions for forgery alleged for enhancement as well as other prior convictions, and related he was aware when he testified his prior convictions would be used against him for the purpose of impeachment.

No documents relating to the guardianship were offered into evidence.

In Fuller v. State, Tex.Cr.App., 423 S. W.2d 924, 925, this court said:

"Every person is presumed to be sane (in absence of an unvacated judgment of insanity) and to have sufficient judgment and reason to be responsible for his acts until the contrary is established. It is by reason of this presumption that the law casts upon one relying on insanity as a defense to a crime the burden of establishing by a preponderance of the evidence that his intellect was so disordered that he did not know the nature and quality of the act he was doing, or if he did know that he was unable to distinguish between the right and wrong as to the particular act charged. Wenck v. State, 156 Tex.Cr.R. 50, 238 S.W.2d 793; Ross v. State, 153 Tex.Cr.R. 312, 220 S.W.2d 137; Ex parte McKenzie, 116 Tex.Cr.R. 144, 28 S.W.2d 133; McCaine v. State, 152 Tex.Cr.R. 108, 211 S.W.2d 190; Simpson v. State, 163 Tex. Cr.R. 385, 291 S.W.2d 341; Freeman v. State, 166 Tex.Cr.R. 626, 317 S.W.2d 726.

"Therefore, mere mental deficiency or derangement, though it may constitute a form of insanity known to and recognized by medical science, does not excuse one for crime. McGee v. State, 155 Tex.Cr.R. 639, 238 S.W.2d 707; Ross v. State, supra. See McCune v. State, 156 Tex.Cr.R. 207, 240 S.W.2d 305 (mere feeble-mindedness short of legal insanity is not a defense to crime); Martinez v. State, 169 Tex.Cr.R. 229, 333 S.W.2d 370.

"Since the issue of insanity at the time of the commission of the offense is primarily a defensive one, it ordinarily should be raised during the course of the trial. If such issue is properly raised by

competent evidence, the court should charge thereon, Article 46.02, Sec. 2(c)(1), Vernon's Ann.C.C.P.; Berry v. State, 58 Tex.Cr.R. 291, 125 S.W. 580, and under such circumstances reversal will follow if the court fails to respond to a timely presented written objection or requested charge. See Stoner v. State, 100 Tex.Cr.R. 16, 271 S.W. 616.

"If, however, the issue of insanity at the time of the offense is not raised by the evidence, the trial court does not err in failing to instruct the jury upon the law of insanity as a defense. Morris v. State, Tex.Cr.App., 382 S.W.2d 259; Williams v. State, 170 Tex.Cr.R. 595, 343 S.W.2d 263; Cook v. State, 71 Tex.Cr.R. 532, 160 S.W. 465; Leeper v. State, 29 Tex.App. 63, 14 S.W. 398.

"It is noted that the rules of evidence known to the common law as to the proof of insanity are to be observed in all trials where the issue is raised. Article 35, Vernon's Ann.P.C.

"Therefore, insanity cannot be proved by general reputation. Article 35, supra, Note 5. Further, mere proof that an accused was not bright or was of weak mind does not raise the issue of insanity. Kirby v. State, 49 Tex.Cr.R. 517, 93 S.W. 1030; Coffey v. State, 60 Tex.Cr.R. 73, 131 S.W. 216; Hogue v. State, 65 Tex.Cr.R. 539, 146 S.W. 905; Craven v. State, 93 Tex.Cr.R. 328, 247 S.W. 515; Banks v. State, 133 Tex.Cr.R. 541, 112 S.W.2d 745."

Further, in 31 Tex.Jur.2d, Insane and Incompetent Persons, Sec. 4. p. 422, it is written:

"Inability to manage, care for, and preserve a specific piece of property is not in itself proof of mental incompetency. And general unsoundness of mind or incapacity to understand a particular transaction is not established by the fact that a person may be eccentric, or forgetful, or given to delusion."

Further, in Section 18 of the same authority at page 436, it is written:

"Guardianship proceedings are designed to protect a person who is for any reason mentally incapable of taking care of himself or his property. The incompetency determined therein need not be the result of mental illness, and no confinement is contemplated; protection of the incompetent from others is the main purpose of the proceedings. * * *"

As earlier noted, no objection was addressed to the court's charge nor was there a special requested charge. We cannot conclude that the evidence was sufficient to reflect fundamental error on the part of the trial court for failure to submit the issue of insanity at the time of the commission of the offense charged.

Appellant's reliance upon Epps v. State, 110 Tex.Cr.R. 406, 10 S.W.2d 566, and Jordan v. State, 130 Tex.Cr.R. 363, 94 S.W.2d 741, is misplaced. Epps was reversed because the trial court improperly excluded the opinion of a non-expert witness even though he stated the facts on which such opinion was based. In Jordan the error was the failure of the court to respond to a timely written objection and submit the sanity issue raised by the evidence, including medical testimony.

It is observed that on the same date that the long delayed sentence was imposed (February 26, 1970) an affidavit of insanity was filed by the appellant's mother. As a result the court impaneled a jury and following a hearing submitted to the jury the question of appellant's insanity as of that date as well as of the date of the trial on the merits. Medical testimony was offered by the State. The jury answered "sane" to both issues submitted by the court. Sentence was then pronounced and notice of appeal given.

Finding no reversible error, the judgment is affirmed.