Alfonso Nathaniel REESE, Appellant,

v.

The STATE of Texas, Appellee.

No. 44988.

Court of Criminal Appeals of Texas.

June 21, 1972.

Ross Teter, Dallas, for appellant.

Henry Wade, Dist. Atty. and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for burglary with intent to commit theft. The punishment, enhanced under Article 62, Vernon's Ann.P.C., was assessed at 12 years.

The sufficiency of the evidence is not challenged. The record reflects that city police officers, who answered a silent burglar alarm in the early morning hours of December 13, 1969 at Crabtree's Electronics store in Dallas, found a cover off of the ventilating fan on the roof and discovered the appellant hiding inside the store.

First, appellant contends that "the enhancement portion of the indictment was read to the jury improperly."

Appellant relies upon the cover page to the transcription of the court reporter's notes which reflects that "the indictment was read aloud to the jury."

The portion of the record referred to does not purport to be verbatim and does not reflect a violation of Article 36.01 § 1, Vernon's Ann.C.C.P. Further, no objection appears in the record. *Cf.* Cox v. State, 422 S.W.2d 929 (Tex.Cr.App.1968).

Still further, the record reflects that the second paragraph of the indictment or enhancement portion was read to the jury at the commencement of the penalty stage of the trial and the appellant entered a plea of "True". Thereafter, without objection, the prosecutor argued to the jury,

". . . This is an enhanced case. You can know about this now. You couldn't yesterday. You couldn't until the man was found guilty of the primary offense that he was charged with . . . ."

The first ground of error is overruled.

Next, appellant asserts "[t]he prosecutor improperly denied Defendant his right not to have the State preclude Negroes from serving on his jury."

The voir dire examination of the jury panel is not included in the record nor does the record reflect a request that such voir dire examination be taken by the court reporter. There are no timely presented bills of exception. Nothing is, thus, presented for review.

In his brief, appellant asserts there were 9 Negroes in the jury panel of 32 and they were eliminated by the State's use of its peremptory challenges. Even if these facts were supported by the record, there is no showing the State's action constituted a purposeful pattern of discrimination. Absent such a showing, there is no denial of equal protection of the laws. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Hardin v. State, 475 S.W.2d 254 (Tex.Cr.App.1972); Walker v. State, 454 S.W.2d 415 (Tex.Cr. App.1970); Johnson v. State, 411 S.W.2d 363 (Tex.Cr.App.1967).

Finally, appellant contends there was an "inexcusable delay in processing the appeal of this case."

The case was tried on March 18 and 19, 1970. The appellant was sentenced on September 4, 1970 and gave notice of appeal on the same date. Appellant, who had been represented by court-appointed counsel at his trial, also filed a pauper's oath on September 4, 1970 in order to obtain an appellate record. The transcription of the court reporter's notes was not filed until June 14, 1971, over nine months later, after several extensions of time. One extension of time (from August 23 to September 14) to file an appellate brief in the trial court was requested by appellant's court-appointed counsel on appeal. It was granted. The State's brief was filed 30 days after the appellant's brief. The record was received in this court on November 24, 1971, but was not reached for submission until May 17, 1972.

It is obvious that appellant's ground of error contained in the appellate brief filed in the trial court on September 14, 1971 was aimed primarily at the nine-month delay in securing a transcription of the court reporter's notes. The extensions in each instance were requested by the appellant's counsel, apparently at the behest of the court reporter. The motions for extension reflect simply that the court reporter need-

ed more time in which to prepare such a transcription.

We cannot say in the light of the record that the delay was "inexcusable." Further, this delay could not serve as a basis for reversal. We have previously had occasion to note delay in other appeals.[1]

An alarm should be sounded to all trial judges so that all possible steps to speed up the appellate process can be taken. In reviewing records, this court has observed that trial judges are too lenient in granting extensions of time to court reporters to file transcriptions and to attorneys, both for the State and the appellants, in which to file appellate briefs in the trial court.[2]

In most cases, no good cause is ever given. The appellants, awaiting the outcome of their appeals, are often confined in the county jail "vegetating" or, if on bail, are walking the streets of our communities years after the conviction free to commit other crimes. The image of our judicial system suffers. We should all work to eliminate avoidable delays.

In his article, "Delay in Criminal Appeals; a Functional Analysis of One Court's Work", which is found in 23 Stanford Law Review 676, vol. 4, (April 1971), Judge Winslow Christian wrote:

"Avoidable delay in deciding criminal appeals is costly to society and detrimental to the aims of the judicial system.

Delay in affirming a judgment of conviction may decrease the conviction's deterrent value, as well as frustrate rehabilitation. Delay in reversing a judgment of conviction allows evidence to grow stale, thereby threatening the validity of a new trial as a factfinding process. If reversal is followed by the acquittal of the appellant, each day of appellate delay will have been a day of unjust punishment. Yet delay has become a prominent characteristic of the American appellate process and a growing threat to the effective administration of justice."

The judgment is affirmed.

---

1. In Guyton v. State, 472 S.W.2d 130 (Tex.Cr.App.1971), the appellate record did not reach the appellate court until over 5 years after the trial. Guyton was ineligible for bail, having received a life sentence. In Dues v. State, 456 S.W.2d 116 (Tex.Cr.App.1970), the accused remained in jail 3½ years from trial until the appellate record reached this court. The case was reversed. In Alexander v. State, 450 S.W.2d 70 (Tex.Cr.App. 1970), the delay between trial and receipt of the appeal was 43 months, it taking 3 years and 9 days to complete the transcription of the court reporter's notes. The delay in Curtis v. State, 450 S.W.2d 634, 635 (Tex.Cr.App.1970), was also 43 months; in Lacy v. State, 450 S.W.2d 640 (Tex.Cr.App.1970), 37 months; in

Marshall v. State, 444 S.W.2d 928 (Tex. Cr.App.1969), 38 months. See, also, David v. State, 453 S.W.2d 172 (Tex.Cr. App.1970); Burge v. State, 443 S.W.2d 720 (Tex.Cr.App.1969); Johnson v. State, 454 S.W.2d 205 (Tex.Cr.App. 1970).

2. See Article 40.09, V.A.C.C.P. Since this statute authorizes the trial court to grant a new trial until the record is received by this court, no supervisory power to regulate the appellate process is vested in the Court of Criminal Appeals. The attention of the Legislature should be called to this cause of appellate delay in criminal cases. Revision of the statute is clearly in order.