## CLAUDE COOK v. THE STATE.

### No. 2691.  Decided October 29, 1913.

**1.—Murder—Self-Defense—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue of self-defense, the court's failure to charge thereon was reversible error.

**2.—Same—Exculpatory Statement—Charge of Court—Self-Defense.**

Where, upon trial of murder, the State introduced in evidence the declarations of the defendant which embraced the issue of self-defense and to this extent was exculpatory, the court's failure to instruct the jury that the State was bound by such declarations, unless they were shown by the evidence to be untrue, in the absence of a charge on self-defense, was reversible error. Following Jones v. State, 29 Texas Crim. App., 20, and other cases.

**3.—Same—Rule Stated—Circumstantial Evidence.**

While the falsity of such declarations need not be shown by positive testimony, yet they must be. shown to be false, either by direct or circumstantial evidence, and such a charge must be given when the State relies for conviction alone upon the admissions and confessions of the accused, where the same contained exculpatory matter.

**4.—Same—Charge of Court—Self-Defense—Rule Stated.**

Where the State did not rely solely upon his confession to show that defendant killed deceased, there being circumstantial evidence authorizing a conviction, yet where the court failed to charge on self-defense as raised by the exculpatory statement and failed to charge on such exculpatory statement, the same was reversible error.

**5.—Same—Opinion of Trial Judge.**

Although the trial judge may have believed that the exculpatory part of defendant's confession was not true, it was, nevertheless, necessary to submit the issue to the jury.

**6.—Same—Evidence—Undisclosed Motive.**

In the absence of any proof that defendant was aware of the fact that deceased had been shot at in February, some months before the shooting, and that for this reason he had purchased a gun which he carried on the day of the killing, such testimony was inadmissible against defendant to show the undisclosed motive of deceased in carrying the gun.  Following Pratt v. State, 53 Texas Crim. Rep., 281, and other cases.

**7.—Same—Insanity—Charge of Court.**

Where there was no evidence that the defendant did not know right from wrong or was insane at the time of the offense, there was no error on the court's failure to charge on insanity.

**8.—Same—Manslaughter—Charge of Court.**

Where the evidence did not raise the issue of manslaughter, there was no error in the court's failure to charge thereon.

**9.—Same—Murder—Change of Law—Degrees of Murder.**

The Legislature, by taking the definition of murder in the first and murder in second degree and consolidating them into one offense, did not declare that the elements constituting those offenses, or either of them, should no longer be punishable, but merely substituted a new penalty.

Appeal from the District Court of Denton.  Tried below before the Hon. C. F. Spencer.

Appeal from a conviction of murder in the second degree; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*Owsley & Owsley,* for appellant.—On question of undisclosed motive of deceased: DeLeon v. State, 155 S. W. Rep., 247; Dowell v. State, 58 Texas Crim. Rep., 482, 126 S. W. Rep., 871.

On question of self-defense: Wilson v. State, 154 S. W. Rep., 1015; Duke v. State, 56 Texas Crim. Rep., 502, 120 S. W. Rep., 894.

On question of court's failure to charge on exculpatory evidence: DeLeon v. State, 155 S. W. Rep., 247; Pratt v. State, 50 Texas Crim. Rep., 227, 96 S. W. Rep., 8; Wheeler v. State, 30 S. W. Rep., 913; Jones v. State, 29 Texas Crim. App., 20.

On question of repeal of degrees of murder: Shepard v. State, 1 Texas Crim. App., 522;.Hall v. State, 52 Texas Crim. Rep., 195.

*C. E. Lane,* Assistant Attorney-General, and *Geo. H. Culp* and *H. R. Wilson* and *F. M. Bottorff,* for the State.—On question of insanity: Powell v. State, 37 Texas Crim. Rep., 348.

On question of exculpatory statement: Slade v. State, 29 Texas Crim. App., 381; Trevenio v. State, 48 Texas Crim. Rep., 207.

HARPER, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at ninety-nine years confinement in the State penitentiary, from which judgment he prosecutes this appeal.

The State proved that appellant entertained animosity towards deceased, Mr. Hope. That during the month preceding the killing appellant was seen in an adjoining pasture and near the Hope farm, sitting around with a gun; that on the day of the homicide he was talking about his wife and child leaving him, and it is apparent he blamed Mr. Hope for the separation. He left Mr. Childs' place, going in the direction of the Hope farm, taking a gun with him; he was seen coming from the direction of and near the Hope farm just before the deceased's body was discovered. These may be said to be some of the circumstances pointing to appellant as the party who killed Mr. Hope, outside of his confession. Mr. Hope was shot in the right side; the shot ranged upward, and were embedded near the left nipple. There is no positive testimony that appellant fired the shot outside of his confession, but the above circumstances would tend strongly to show his guilt, although two other men are shown to have been in the wheat field not a great distance from the body. These two men did not testify on the trial of the case. However, Mr. Childs testified that he lived about a mile south of the Hope farm, and appellant worked for him that morning; that after dinner appellant left, carrying his gun, and went in the direction of the Hope farm; that some time after this he met appellant about half way between his farm and the Hope farm, and appellant said, "It's all over': I said, 'What is all over?' he said, 'I shot him'; I says, 'Did you kill him?' he said, 'I don't know,' and I said, 'Didn't you say anything to him?' he said, 'Yes,' he said, 'I

asked him where Lou and Don was, and he addressed me with his left hand (indicating, extending left hand before him and shaking same) and he put his right hand behind him as if to draw a weapon and then I shot him.' I said, 'I done heard it,' and he said, 'What did you hear?' and I told him that I heard somebody seen him shoot him off the binder and he said, 'It's a damn lie, nobody didn't see me.'" On cross-examination the witness said, "He did tell me that it was all over and that he called to talk to old man Hope about Lou and Don, and that when he was talking to him (Hope) he (Cook) had his gun down by his right side. As to whether he didn't say that old man Hope started to curse and said, 'You God damn son of a bitch I will kill you,' will say that he didn't use any cuss words to me. As to whether he didn't say that Hope threw one hand out like that (indicating, extending hand) and went for a gun with the other,—the right, will say he said he addressed him with his left hand and went for a gun with his right hand, and he said that he had his gun by his side and that he then shot him. He didn't relate the conversation between them any more than I have related. When I met him there he told me that he was going to the sheriff's office to surrender. As to whether he was excited and talked abruptly, will say I didn't see much change about him. As to whether he didn't go into details about anything, will say no more than I have stated. The only cuss words that were used there,—I had misunderstood the man that told me and I thought he said that they had seen him shoot him off the binder, and when I told him he said that it was a damn lie and that was the only cuss word used; it was in reply to me saying that somebody said that they saw him shoot him off the binder; it was my mistake. He said it was a damn lie that nobody saw him, and he told me that at the time he did shoot him he was pointing at him with his left hand and going for the pistol with the other and that is what he shot him for."

The court refused a charge presenting the issue of self-defense, and also refused a charge instructing the jury that if they believed that appellant made the statements to Cook, then the whole of the admissions or confessions are to be taken together, and the State is bound by them unless they are shown by the evidence to be untrue.

State's counsel insist that the court committed no error in refusing to give either or both of the special charges, and we are cited to the case of Powdrill v. State, 69 Texas Crim. Rep., 340, 155 S. W. Rep., 231, as sustaining that contention. In the Powdrill case the court gave a full and fair charge on self-defense, and having done so, it was held that the issue was sufficiently presented, as the jury could not have found that appellant did not act in self-defense, without finding that the statement made was not true. Again, the statement in the Powdrill case was held to be res gestae, and consequently the events speaking, and not a confession, and for this reason it was held that the charge on self-defense was the appropriate and proper charge, and no charge was necessary instructing it was incumbent on the State to prove the state-

ment untrue. In this case the court did not charge on self-defense, nor did he charge that the State having introduced the confession, it was incumbent on it to prove the exculpatory portion thereof false. Had the court given either of these charges we would be inclined to hold that no error was presented, for the issue would have been submitted to the jury. In Jones v. State, 29 Texas Crim. App., 20, this court said: "We are of the opinion that in all cases where admissions or confessions of a defendant are admitted in evidence against him, and such admissions or confessions contain exculpatory or mitigating statements, it would be proper and just to the defendant to instruct the jury that the whole of the admissions are to be taken together, and the State is bound by them unless they are shown by the evidence to be untrue." Of course, the falsity thereof need not · be shown by positive testimony, but may be shown to be so by circumstances as well as any other fact, if the circumstances are of that force and cogency to cause the jury to believe the exculpatory part of the statement to be false beyond a reasonable doubt. In the Pharr case, 7 Texas Crim. App., 472, under the facts in that case it was held that this character of charge should have been given, and some have construed that case to hold that such a charge must always be given when the State introduces a confession of a defendant which also contains exculpatory statements, but such has never been the rule in this court. The extent of the holding and the true rule is announced in Slade v. State, 29 Texas Crim. App., 381, in which Judge Hurt states the law to be: "In the Pharr case the trial court had submitted to the jury two charges relating to the confessions or statements of the accused, the last being calculated to neutralize the first; the first being correct and the last wrong. The charge rejected in this case is in the language of the correct one in Pharr's case. Now, it is not decided in the Pharr case that, though correct, such a charge must always be given, when requested, in every case in which the State introduces in evidence the admissions of the accused. This question was not before the court in the Pharr case. Under what circumstances must such a charge be given? This question is answered in Jones v. The State, ante, p. 20.. When the State relies for conviction alone upon the admissions and confessions of the accused, and such confessions or admissions contain exculpatory or mitigating matters, such a charge should be given." In this case the State did not rely solely upon the confession to show that appellant killed deceased; circumstantial evidence, if believed by the jury, was introduced by the State, authorizing a conviction. So the failure to charge this feature of the law would not be reversible error had the court charged on self-defense as raised by the exculpatory statement, as was done in the Powdrill case, supra. The exculpatory statement introduced by the State, and emphasized by appellant in his cross-examination of the witness, raised the issue of self-defense from the appearance of danger as it appeared to him at the time. The fact that ill-will existed between deceased and appellant is shown by the testimony of both the State

and the defendant. This defendant, in his confession, admits he shot deceased, but gives as his reason that when he asked where his wife and child were (Lou and Don) that deceased replied, "Right where I am going to keep them, and you keep off my place," at the same time going for his gun with his right hand. In the case of Marnoch v. State, 7 Texas Crim. App., 269, this court said: "Men, when threatened with danger, must determine from appearances and the actual state of things around them as to the necessity of resorting to self-defense; and if they act from reasonable and honest convictions, they will not be held responsible criminally for a mistake in the extent of the actual danger, where other judicious men would have been alike mistaken. A contrary rule would make the law of self-defense a snare and a delusion. It would become a mockery of the sacred right of self-preservation."

The place where the bullet struck deceased; the range of the ball, and the other circumstances attendant upon the killing, would support a finding of the jury that this exculpatory part of the confession is not true, and evidently the court thought the circumstances so showing were so forcible and cogent as to relieve the court of the necessity of submitting that phase of the case to the jury. But under our law the jury are the judges of the credibility of the witnesses and the weight to be given the testimony, and as it is an undisputed fact that appellant in admitting the killing gave this explanation of his act in the same conversation and at the same time, he was entitled to have the issue thus raised, when this confession is introduced by the State as a part of its case, submitted to the jury in either one or the other modes, that is, by a charge on self-defense from apparent danger, or by a charge similar to those given in the Pharr and Jones cases, supra.

Again the court permitted the daughter of deceased to testify that her father, deceased, was shot at late one evening in February preceding this homicide in June. It is not attempted to be shown that appellant did the shooting in February. If the testimony had shown this fact, then, that appellant had attempted to kill deceased a short time prior to the fatal encounter would be admissible on the question of motive, etc. But as hereinbefore stated, it was not attempted to be shown that appellant fired the shot in February, but it was offered, as disclosed by the record, to explain why deceased had purchased and had been seen in possession of a gun, and the court instructed the jury in his main charge as follows: "The witness, Lena Hope, testified that the deceased was on a certain occasion prior to the homicide, shot at in the night time and that thereafter he procured and kept at his home or about his home, a shot gun; the testimony of his being shot at was admitted before you for the purpose of explaining the cause of the deceased procuring said shot gun, if in your opinion it does explain it, and cannot be considered by you as original criminating evidence against the defendant in this cause." In the absence of any proof that appellant was aware of the fact that deceased had been shot at in February, and that for this reason he had purchased and had a gun, would such testi-

mony be admissible against him to show the undisclosed motive of deceased in carrying the gun? We think not. If the record disclosed that appellant knew that deceased had been shot at in February, by an unknown person, and for this reason had purchased and was carrying a gun, then the testimony under this record might be admissible, and the charge as given not improper. In Branch's Criminal Law, sec. 477, will be found a long list of cases wherein it is held that a defendant can only be bound so far as matters reasonably appear to him, and that deceased's reason or motive for doing a given act, *unknown* to the person on trial, is not admissible against him. Brumley v. State, 21 Texas Crim. App., 222; Johnson v. State, 22 Texas Crim. App., 206; Gilcrease v. State, 33 Texas Crim. Rep., 619; Pratt v. State, 53 Texas Crim. Rep., 281.

The court did not err in refusing to submit the issue of insanity, as there was no testimony that defendant did not know right from wrong, or that he was insane at the time of the commission of the alleged offense.

Neither was a charge on manslaughter called for under the evidence adduced on this trial. Instead of raising that issue, the evidence would exclude the idea that the killing took place under the influence of sudden passion aroused by an adequate cause. Nothing in appellant's confession, nor any other testimony adduced suggested any state of facts which would be adequate cause in law for sudden passion.

Many other grounds are stated in the motion, but none of them, other than as above stated, would present reversible error.

Appellant insists that as appellant was convicted of murder in the second degree, and there is now no such offense as murder in the second degree known to our law, he is entitled to have the case reversed and dismissed. To this contention we can not accede. It is true that article 16 of the Penal Code provides that the repeal of a law, *where the repealing statute substitutes no other penalty,* will exempt from punishment all persons who may have offended against the provisions of such repealed law, but article 17 provides that when by the provisions of the repealing statute a new penalty is substituted for an offense made punishable under the Act repealed, such repealing statute shall not exempt from punishment a person who has offended against the repealed law while it was in force, and article 18 says if an offense be defined by one law, and by a subsequent law the definition is changed, no such definition or modification shall take effect as to offenses already committed, but all offenders against the law shall be tried and their guilt or innocence determined in accordance with the provisions of the law before such change in the definition.

The Legislature by taking the definition of murder in the first and murder in the second degree and consolidating them into one offense, does not declare that the elements constituting those offenses or either of them shall no longer be punishable, but instead of doing so, specifically declares that such acts shall continue to be offenses against the law,

merely substituting a new penalty, and .articles 15, 16, 17 and 18 of the Penal Code clearly show that there is no merit in the contention of appellant.

The judgment is reversed and the cause is remanded.

Reversed and remanded.

DAVIDSON, Judge.—I agree to reversal, though not to all the reasoning. I think correct conclusion was reached in Combs v. State, 52 Texas Crim. Rep., 613, and Pratt v. State, 53 Texas Crim. Rep., 281, in regard to confessions of defendant when used by State to connect him with the alleged offense.