STONEWALL CARLILE v. THE STATE.

No. 6119.   Decided June 24, 1921.

1.—Murder—Change of Venue—Affidavit—Practice in Trial Court.

Where the issue made by the State based upon an affidavit attacking the credibility and means of knowledge of defendant's compurgators in his application for change of venue was in statutory form, the court did not err in overruling defendant's demurrer thereto.

2.—Same—Change of Venue—Scope of Inquiry—Prejudice.

Upon the hearing of evidence upon the issue of a change of venue, the trial court commits no error in enlarging the scope of the hearing to extend beyond the credibility and means of knowledge of the compurgators, when it hears evidence as to the existence of prejudice, etc.   Following Meuly v. State, 26 Texas Crim. App., 274, and other cases.

3.—Same—Discretion of Court—Rules Stated.

It will not be concluded that the trial court abused his discretion in overruling the application for a change of venue unless injury appears.

4.—Same—Jury and Jury Law—Special Venire.

Where fifty-four veniremen out of sixty veniremen summoned appeared, and eleven jurors were obtained, and the trial court ordered fifteen other veniremen out of which the remaining juror was accepted, and the defendant did not exhaust his peremptory challenges, there was no reversible error.

5.—Same—Evidence—Ill Feeling.

Upon trial of murder, there was no error in permitting the State to introduce testimony with reference to the parties toward a certain woman from whom ill-feeling arose between them, and to show the intimacy of defendant with said woman.

6.—Same—Evidence—Flight—Concealment.

Upon trial of murder, there was no error in the introduction of testimony by the State showing that after the shooting, the officers, searching for defendant, found him in a large meat box;   defendant's contention being that he went there in fear of a mob.   This would only affect the weight of evidence.

1

7.—Same—Evidence—Res Inter Alias Acta—Undisclosed Motive.

Upon trial of murder, testimony introduced by the State, with reference to acts between deceased and a certain gun-smith concerning the gun which he carried and the conversation between deceased and his wife, regarding said gun, were *res inter alias acta*, and bore upon an undisclosed motive on the part of the deceased in carrying said gun, the same was inadmissible. Following Brumley v. State, 21 Texas Crim. App., 238, and other cases.

8.—Same—Evidence—Other Offenses—Credibility of Witness.

In the absence of proof of some character of a legal charge against the witness, or legal arrest or conviction for theft of the property in question, the testimony was inadmissible. Following Lassater v. State, recently decided.

9.—Same—Self-defense—Apparent Danger—Charge of Court.

Where, upon trial of murder, the court's charge on self-defense restricted defendant's right to the theory of real danger when the evidence raised the issue of apparent danger, same was reversible error, although the charge was correct in the abstract.

10.—Same—Provoking Difficulty—Charge of Court.

Where, upon trial of murder, the evidence raised the issue of imperfect self-defense not brought about by provoking the difficulty, but by the act of defendant beginning hostilities a charge should have applied the law to this phase of the case.

11.—Same—Manslaughter—Charge of Court—Mental Condition of Defendant.

Where, upon trial of murder, there was evidence which raised the issue of adequate cause, and which rendered the mind of the defendant incapable of cool reflection, the court should have submitted manslaughter upon this issue of fact in evidence, and a failure to do so was reversible error.

Appeal from the District Court of Cass. Tried below before the Honorable H. F. O'Neal.

Appeal from a conviction of murder; penalty, fifteen years' imprisonment in the penitentiary.

The opinion states the case.

*J. H. Beavers,* and *C. C. Hines,* for appellant.—On question of change of venue: Cortez v. State, 69 S. W. Rep., 536; Sorrell v. State, 169 id., 299; Streight v. State, 138 id., 742.

On question of undisclosed motive of deceased: Winfrey v. State, 56 S. W. Rep., 919; Cook v. State, 160 id., 465; Woodard v. State, 51 S. W. Rep., 1112; Bradley v. State, 132 S. W. Rep., 488.

On question of other offenses: Mercer v. State, 66 S. W. Rep., 555.

On question of credibility of witness: Kaufman v. State, 159 S. W. Rep., 62; Ballard v. State, 160 id., 719.

On question of charge on self-defense: Andrews v. State, 165 S. W. Rep., 189; Lyons v. State, 159 id., 1072; Duke v. State, 133 id., 433.

On question of apparent danger: Riptoe v. State, 42 S. W. Rep., 381; Graham v. State, 61 id., 714.

On question of provoking difficulty: Sanchez v. State, 156 S. W. Rep., 220; Johnson v. State, 149 id., 165.

On question of charge on manslaughter: Miller v. State, 105 S. W. Rep., 502; Floyd v. State, 105 id., 791; Williams v. State, 136 id., 771.

*R. H. Hamilton,* Assistant Attorney General, and *C. A. Wheeler,* District Attorney, for the State.—On question of flight: Hunter v. State, 59 Texas Crim. Rep., 439.

On question of provoking difficulty: Bozzano v. State, 60 Texas Crim. Rep., 507; Dougherty v. State, 128 S. W. Rep., 400.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Cass County of the murder of one John Lance, and given fifteen years in the penitentiary as punishment.

The issue made by the State based upon an affidavit attacking the credibility and means of knowledge of appellant's compurgators in his application for change of venue, is in statutory form and the court did not err in overruling appellant's demurrer thereto. It has been held that upon the hearing of evidence upon the issue of change of venue, the trial court commits no error in enlarging the scope of the hearing to extend beyond the question of the credibility and means of knowledge of the compurgators and hears evidence as to the existence of prejudice in fact. Meuly v. State, 20 Texas Crim. App., 274; Lacy v. State, 30 Texas Crim. App., 119; Barnett v. State, 76 Texas Crim. App., 555, 176 S. W. Rep., 580. Nor will we conclude that the trial court has abused the discretion confided in him, in the disposition of such matters, unless injury appears. The qualification of the trial court to appellant's bill of exceptions complaining of the overruling of said motion for change of venue, shows that of the sixty veniremen summoned, fifty-four appeared and out of this limited number eleven jurors were obtained. The trial court ordered fifteen other veniremen, and the second man called for examination was accepted as a juror by both parties. Appellant did not exhaust his peremptory challenges.

No error was committed in allowing the State to show that prior to the homicide appellant visited a certain woman in Arkansas. The evidence shows that the apparent beginning of ill-feeling between the parties to this tragedy arose over matters connected with said woman, it being claimed by the State that at the request of appellant, deceased had gone with appellant to a certain house and had there guaranteed and stood for the payment of the board of said woman by appellant; and that later appellant had refused to pay said board bill and trouble had arisen over said fact. The evidence objected to shows appellant's intimacy with and attention to said woman, strengthening the likelihood of the threats in evidence claimed to have been made by him against deceased because of said woman.

For the same reason it was proper to allow evidence as to what occurred when appellant and deceased went to arrange for the board of said woman and as to who was to pay for said board. In line with the above and materially affecting the attitude of appellant and deceased

toward each other, was the evidence of what occurred when deceased and other parties went to see appellant about payment of said board bill.

After the shooting the officers searching for appellant testified that they found him in a large meat box, evidence concerning which fact was objected to. Flight and concealment of the accused are admissible. Branch's Ann. P. C., Sec. 135. Appellant's contention that his action but expressed his fear of a mob, would be a matter addressed to the consideration of the jury and would only affect the weight of evidence regarding his concealment, and would not make such evidence inadmissible.

At the time he was killed, deceased was carrying a shotgun. The evidence develops that some time prior thereto, because of the absence of a trigger to said gun, it had been carried to a Mr. Cope for repair; and that deceased had been in after said gun two or three times in the interim but failed to get it because a trigger which had been ordered for the gun had not come. It was proved by the State that on the afternoon of the homicide and a short time before same, deceased went into Mr. Cope's place of business and had a conversation with him with reference to said gun, and told Mr. Cope that he would take the gun with him and when he was notified of the receipt of said trigger would return the gun for further repairs. The State also proved that that morning before going to town the wife of deceased had told him to get the gun and bring it home for the purpose of shooting a hawk. The proof further shows that a short time before the fatal shooting deceased was coming out of the mouth of an alley carrying his gun, and that he was shot at by appellant who was some 80 or 100 feet away, and that within thirty or forty minutes after said first shooting, the fatal encounter took place. Appellant objected to the testimony of Mr. Cope as to what transpired between him and deceased in their conversation about the gun, and to Mr. Cope's expression of his opinion that deceased seemed about the same John Lance that he always was, on said occasion; also to the testimony of Mrs. Lance as to the conversation between her and her husband regarding said gun that morning. The grounds of these objections were that said evidence was *res inter alias acta* and bore upon an undisclosed purpose and motive on the part of deceased in having said gun, of which appellant knew nothing and by which he could not be bound. We are of opinion that said evidence was inadmissible under the facts in testimony. Brumley v. State, 21 Texas Crim. App., 238; Cook v. State, 71 Texas Crim. Rep., 532, 160 S. W. Rep., 465; Tillman v. State, 51 Texas Crim. Rep., 202, 62 S. W. Rep., 1063; Branch's Ann. P. C., Sec 1930.

The State was permitted over objection to ask appellant's witness Rhodes if he had not gotten mixed up with a pair of shoes, and if the officers did not come to his house and get a pair of shoes which he had taken from some one, and if he had not been accused of steal-

ing them. The objections were that it was not sought to be shown that said witness had been indicted or legally charged for theft of said shoes, and that the credibility of said witness could not be attacked by showing that he had been merely accused by some indefinite person of such theft. In the absence of proof of some character of a legal charge against the witness, or legal arrest or conviction for theft of said shoes, the evidence would not be admissible. Lasseter v. State, decided at the present term.

Appellant excepted to the court's charge for failure to submit the issue of self-defense based on apparent danger. We are inclined to think the exception well taken, and especially so in view of the fact that if appellant had any right of self-defense at all under the facts in this case, it was based almost, if not entirely, upon apparent danger. That part of the charge complained of is as follows:

"If from the evidence you believe the defendant killed the said John Lance, but further believe that at the time of so doing the deceased had made an attack on him or was about to make an attack upon him which, from the manner and character of it caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you will acquit him."

We believe this charge restricted appellant's right to act to the theory of real danger. We are of opinion that the trial court should have told the jury, in substance, that if they believed from the evidence that appellant killed deceased, but that at the time of such killing it reasonably appeared to appellant from the acts of deceased, viewed from what the jury believed to have been his standpoint at the time, that deceased was about to make an attack upon him, which from the manner of same, etc. Branch's Ann. P. C., Sec. 1075. A correct statement of a legal principle in an abstract definition, such as appears in the preceding paragraph in the charge, to the one under discussion, does not take the place of or obviate the necessity for, the application of such principle to the facts.

Appellant excepted to the charge on provoking the difficulty. We confess this matter has given us much trouble. There can be no doubt but that the fact that appellant shot at deceased a short time before the fatal encounter actually took place, must be considered in determining the law applicable. It appears to us that if said prior shooting be eliminated there would be no evidence in this record supporting the theory of self-defense, for the case would be one in which it would appear that a man walking along a public street carrying a shotgun who starts into a public store, was shot through the heart by a man on the inside using a Winchester rifle, who had no other provocation for his act than the fact that the man carrying said shotgun had started into the store. It would appear that a statement of these facts is sufficient to make clear the necessity for considering the case from the standpoint of appellant in order to determine his legal status. The facts surrounding said first shooting appear to be these: Deceased

was coming out of the mouth of an alley carrying his shotgun. Appellant was standing near his car 80 or 100 feet from the mouth of said alley, saw deceased about the time he came out of said alley apparently, stepped to his car, got therefrom a Winchester rifle and without more ado shot at deceased. The record shows that approximately a half hour before, appellant had said he was going to kill deceased. Deceased went back into the alley and appellant went into the store in front of which his car was standing. A description of said store building is necessary to an understanding of the case. It was fifty feet wide, having a glass front and being divided into compartments by a brick partition in which at the front end thereof was an opening, connecting the two compartments and practically making two store rooms of said building. The East one was used for drygoods and the West for hardware, having a joint office in the rear. Appellant was in the drygoods compartment and a number of people were arguing with him and endeavoring to persuade him to go home and not have further trouble. Some one looked out the glass front and said there comes Lance. Deceased was coming along the sidewalk in front of said store carrying his shotgun. There was a general scattering of the people around appellant. One of them, the city marshal, went out the front door of the drygoods store and advanced toward deceased, making some remarks to him about not coming any further. One of the men near appellant said he ran through the opening into the hardware compartment and back to the rear. Deceased turned toward the door of the hardware store, advanced a step or two, and, according to some of the witnesses, put his foot on the door sill. At this juncture appellant, from a position behind the brick partition wall, fired his Winchester through the opening at the end of said partition, and through a crack of the door of the hardware compartment, shooting deceased through the heart, resulting in almost immediate death. Appellant fired other shots at deceased through the glass front and from the front door of the drygoods store. Appellant claimed justification for his act in shooting deceased upon the theory that he believed the latter was about to attack him and take his life or cause him serious bodily injury. The inquiry would be natural in such case as to why appellant entertained such belief, and whether there were facts upon which same was based. The only facts in this record which would appear to justify said belief would be that shortly prior thereto, a time variously estimated at from ten to thirty minutes, appellant had shot at deceased. We entertain grave doubts as to whether the shot fired at deceased by appellant, some time prior to the homicide, could be deemed such act as is commonly understood as one calculated to provoke a difficulty. It seems to us to come more nearly within the line of authorities discussing and defining beginning a difficulty. As we understand the law, one provokes a difficulty by doing some act or indulging in some conduct calculated to cause his adversary to make the first attack, the party provoking such difficulty having the intent in what he does and says to use the attack thereby provoked by him,

as a pretext or excuse for taking the life or injuring such adversary. A shot fired from a Winchester rifle by one person at his enemy, would hardly be deemed an act merely provocative of an attack, but would seem to us to be the act of one who thereby begins hostilities, and that the rules laid down in many cases by this court as to the law affecting one who produces the occasion or brings on a difficulty, would be more applicable to the facts in this case than would the law of provoking a difficulty. Appellant could not claim the law of perfect self-defense if his own wrongful act in shooting at deceased produced or brought about the situation in which he shot and killed the latter. In view of the fact that the case must be reversed for the errors above discussed, we have called the attention of the court to the above matters as indicating our view of the law.

There are a number of other errors complained of in the introduction and rejection of evidence which we have examined and in which we find no error. There was an objection to the charge of the court for refusal to submit the issue of manslaughter. We believe the exception well taken. If it be granted that appellant was in the wrong in his assault upon deceased at the first meeting between the two on the afternoon of the homicide, and that he was not justified in believing his life in danger at the time he fired the fatal shot, still this would not preclude him from the right to have the jury pass upon his mental condition at the time he fired said fatal shot. The matters mentioned in our statute as being adequate cause to produce that condition which renders the mind incapable of cool reflection, are only illustrations and not an attempted enumeration of all the causes which may produce such condition. The question is, was the condition of the mind of the accused at the time of the killing such as to render it incapable of cool reflection? That condition may be one of terror. It would not appear to be a theory unsupported by testimony in this case, that when the accused saw the man whom he so recently shot at, coming along the sidewalk with his gun in his hand, that he was thereby so alarmed as that a jury might conclude him incapable of cool reflection, and they might believe that acting under the influence of such sudden passion, he took the life of deceased at a time when he was in no immediate danger. These are questions of fact which must in every case be left to the decision of the jury under fair and full instructions. If they believed such killing was in pursuance of a formed design which had remained in the mind of the accused from the time of his first shooting and which actuated him in the latter encounter, they would find him guilty of murder, but if they believed he had in good faith abandoned the difficulty, even though he was in the wrong and that when he fired the fatal shot he was actuated by sudden passion and not by malice, they might find him guilty of no more than manslaughter.

For the errors mentioned above the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*