### T. J. HOOVER V. THE STATE.

No. 11320.   Delivered March 14, 1928.

Rehearing denied May 16, 1928.

1.—Manslaughter—Charge of Court—Exceptions To—Rule Stated.

It is required by Art. 658, C. C. P., and decisions thereunder, that exceptions to the charge must distinctly specify each ground of objection, and when the exception to the charge only presented that same is wrong

because the evidence does not show that the deceased had made an attack upon the defendant, and that the charge therefore submitted a hypothetical case, the sufficiency of an exception of this character is not apparent. See Pinkerton v. State, 94 Tex. Crim. Rep. 127, and other cases cited.

2.—Same—Charge of Court—On Self-Defense—Sufficient.

Where the court in his charge on self-defense told the jury that in determining the right of appellant to act in self-defense either as against act, word, or demonstration of deceased, it would make no difference whether the danger was real, or merely apparent, and that in determining the right of appellant to act it is your duty to take into consideration all the facts and circumstances in evidence and place yourselves in his position at the time of the killing and view same from the standpoint of the defendant and from his standpoint alone, said charge under the evidence in this case was sufficient. Distinguishing Carlile v. State, 232 S. W. 824, and other cases cited in original opinion.

3.—Same—Continued.

This court must look to the facts of each case to determine the law applicable, and must also look to an entire charge, some section or part of which might be deemed subject to criticism, and if the fair effect of the whole charge is to present the law applicable to the facts, this court would not reverse.

4.—Same—Requested Charge—On Issue Not Raised—Properly Refused.

Where, on a trial for manslaughter, appellant requested a charge on his right to defend against an attack upon his residence, and an attempt on the part of deceased to forcibly enter the residence and take from appellant his gun, there being no evidence raising such issues, the requested charge was properly refused.

5.—Same—Requested Charge—On Threats—Properly Refused.

It is well settled that it is not necessary to charge on threats made at the time of and coincident with the homicide. See Branch's Ann. P. C., Sec. 2075; Hancock v. State, 47 Tex. Crim. Rep. 3, and Dobbs v. State, 54 Tex. Crim. Rep. 552.

ON REHEARING.

6.—Same — Charge of Court — Exceptions Thereto — Must Be Distinctly Specified.

Where the exception to one paragraph of the court's charge was not sufficiently definite to suggest that appellant was directing his objection to the form in which the law was submitted, the wording of the objection indicating that appellant was complaining because of a supposed omission from the charge, but which upon inspection by the trial court would disclose no such omission, we cannot hold the exception to have "distinctly specified" the ground of objection as required by Art. 658, C. C. P.

Appeal from the District Court of Brown County. Tried below before the Hon. J. O. Woodward, Judge.

Appeal from a conviction for manslaughter, penalty five years in the penitentiary.

The opinion states the case.

*Jenkins, Miller & Wilson* of Brownwood, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for manslaughter, punishment five years in the penitentiary.

Deceased was shot through the heart by appellant, who used a shotgun. No previous ill-will or difficulty between the two is shown by the record. Appellant had an eating house in a little town, and had on the sidewalk in front a billboard, or menu sign. Deceased stumbled over it in the darkness and remarked to parties who were with him that it was a good thing to break a man's knee cap or leg, and threw it out in the street. Appellant had retired for the night, but got up and came to the door in his nightclothes. According to several witnesses he stuck the barrel of a shotgun out of the door and demanded to know "What tough s— of a b— threw my sign out there." Deceased had gone to the car of Mr. Wooldridge, which was in the street in front of appellant's place, and he replied that he had thrown it out. Thereupon appellant demanded with an oath that deceased bring it back, and, according to the testimony of witnesses, threatened to blow out the brains of deceased if he did not do so. Deceased refused to bring the sign back and appellant shot him. Six men, apparently without interest in the case, testified for the state, all denying that deceased advanced upon appellant or made any motion as if to draw a weapon of any kind. Appellant was his own only eyewitness. His testimony is self-contradictory in various places. In his direct testimony he said:

"I guess I was mad when I saw my sign in the street, it made me mad, sure—well, I expect about as mad as I could get. When I told him to bring the sign back and he said he wouldn't do it, I didn't say anything, I just raised the gun and shot, I tell you, that is when the shot was fired."

In another place he testified:

"When he said he would make me eat that gun he was standing out there, oh, I judge it was six feet to Mack Wooldridge's car, or someone's car, it looked just exactly like Mack's. At that time he was standing out there and the best I could say he had his hands like this (indicating), and he jerked one hand up like he was going to get a gun, and I thought he was going to kill me, that is what I thought exactly—that is exactly why I shot him."

In his cross-examination appears the following:

"That is what made me mad, crawling out of bed in my nightclothes and them threatening to tear my business down. And

that sign being thrown off kinder added to it, it would have added to anyone. I shot that man because he didn't put that sign back when I told him to, yes, and other things—that was part of it. As to whether, if he had put the sign back, I would have shot him—I don't know what I would have done, I don't suppose I would have shot him. When I first came to the door and talked with Mr. Phillips he was standing out, I guess, one-fourth of the way across the street."

Again in his cross-examination he stated:

"I did not see him pull a pistol—I saw him make a movement with his right arm. It just looked to me like he made a movement to go in his hip pocket. I never seen a pistol. Whenever his hand come up that way (indicating), it all happened, you know."

In one part of his testimony appellant said he shot deceased when he refused to bring back the signboard, but in another place he said that after deceased refused to bring the sign back the latter said he would make him, appellant, eat his gun, and that deceased then jerked up his hand like he was going to get a gun and he thought deceased was going to kill him, and thereupon he shot him. Appellant denied having a shotgun in his hand when he opened his door, and denied thrusting the barrel of said gun out of the door before he shot, but claimed that the gun was beside the door until the deceased threatened to make him eat his gun, and that he then got it and shot.

The testimony of the state made out a case of murder; that of appellant—while self-contradictory as above shown—was sufficient to call for a charge on self-defense. The learned trial judge charged on self-defense as follows:

"A reasonable apprehension of death or serious bodily injury will excuse a person in using all necessary force to protect his life or person. It is not necessary that the danger should be actual, provided he acted upon a reasonable apprehension of danger as it appeared to him, viewed from his standpoint at the time.

"You are therefore instructed that if you believe from the evidence, or if you have a reasonable doubt thereof, that the deceased, Robert Phillips, had made or was making or was about to make an attack upon the defendant and by reason thereof, if any, there was created in the mind of the defendant a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear of death or serious bodily injury, the defendant shot and killed the

deceased, then under such circumstances, if any, it would be your duty to find him not guilty.

"In connection with the foregoing charge in respect to the right of the defendant to act in self-defense, either as against any act, words or demonstrations of the deceased, it matters not whether the danger, if any, was real and in fact existed, or whether the same was merely apparent; the defendant had the legal right to act in self-defense, as that right is herein explained whether the danger, if any, was real or apparent, and in determining the rights of the defendant to act it is your duty to take into consideration all the facts and circumstances adduced in evidence in this case and place yourselves in his position at the time of the killing and view the same from the standpoint of the defendant and from his standpoint alone, as it reasonably appeared to him at the time of the killing."

To the second quoted paragraph of this charge an exception was taken, which is as follows:

"Defendant objects to the eighth paragraph of the court's charge wherein the jury are instructed that 'if you' believe from the evidence or if you have a reasonable doubt thereof that the deceased, Robert Phillips, had made or was making or was about to make an attack upon the defendant by reason thereof, if any, there was created in the mind of the defendant a reasonable expectation or fear of death or serious bodily injury and that acting under such reasonable expectation or fear of death or serious bodily injury the defendant shot and killed the deceased, then under such circumstances, if any, the defendant shot and killed the deceased then under such circumstances, if any, it will be your duty to find him not guilty.' The objection to this portion of the charge is that it submits a hypothetical case not made by the evidence, in that the evidence does not show that the deceased had made an attack upon the defendant. The charge should have instructed the jury if the defendant reasonably believed that the deceased was about to make an attack upon him to take his life or do him serious bodily injury he had the right to shoot the deceased and such killing would be in self-defense."

It is required by Art. 658, C. C. P., and decisions thereunder, that exceptions to the charge must distinctly specify each ground of objection. Pinkerton v. State, 94 Tex. Crim. Rep. 127; Regittano v. State, 96 Tex. Crim. Rep. 477; McCauley v. State, 97 Tex. Crim. Rep. 1. Inspection of the exception above quoted makes plain that it sets out one reason only why the charge is wrong, viz.: that the evidence does not show that the deceased

*had made an attack* upon the defendant, and that the charge therefore submitted a hypothetical case. The sufficiency of an exception of this character is not apparent. The trial court well knew that he had nowhere limited the right of the accused to defend against an attack *already made.* The court told the jury in that paragraph first above quoted, that if appellant acted upon a reasonable apprehension of danger as it appeared to him, viewed from his standpoint at the time, he would be excused in using whatever force was necessary to protect himself, and immediately followed this in the second paragraph so quoted by saying that if the jury found from the evidence, or had a reasonable doubt thereof, that deceased *had made or was making or was about to make* an attack upon appellant, and by reason thereof there was created in the mind of appellant a reasonable apprehension or fear of death or serious bodily injury, acting under which he shot and killed deceased, he should be acquitted; and in immediate connection with this the court further told the jury that in determining the right of appellant to act in self-defense, *either as against act, word or demonstration of deceased,* it would make no difference whether the danger was real or merely apparent — that the right of appellant to act in self-defense existed whether the danger was real or apparent, and further and in this connection as if to make the matter emphatic, the court again told the jury that in determining the right of appellant to act, "It is your duty to take into consideration all the facts and circumstances in evidence, and place yourselves in his position at the time of the killing, and view the same from the standpoint of the defendant and from his standpoint alone."

The charge in Carlile v. State, 232 S. W. 824, was held erroneous in that it failed to tell the jury—as was done in the instant case—that if they believed from the evidence that it reasonably appeared to the accused *from his standpoint at the time,* from the acts, etc., of deceased that he was about to make an attack upon the appellant, etc. Nowhere in the charge criticised in that case were the jury told to view the matter from the standpoint of the defendant at the time, nor were they instructed therein to acquit if from such standpoint it reasonably appeared to appellant that his life or person was in danger. So also in the case of Barrett v. State, 215 S. W. 858, it was held that the charge containing no instructions that the jury were to view the situation from the standpoint of the defendant in determining whether it reasonably appeared to him whether he was in danger, was erroneous. Nothing was said in the charge in the last mentioned case about the right of the accused to

defend against apparent danger as well as real danger. We must look to the facts of each case to determine the law applicable, and must also look to an entire charge, some section or part of which might be deemed subject to criticism, and if the fair effect of the whole charge is to present the law applicable to the facts, this court would not reverse. We are required in every instance, as a predicate for reversal thereon, to believe that the charge complained of was, as a whole, injurious to the rights of the defendant.

By the "rights of the defendant," as applied to the charge in the case before us, is meant—that he had the right to have the trial court give the jury the law of self-defense in a case of apparent danger. Whether appellant told the truth about the facts which caused him to shoot, was for the jury. In order that the jury might know what to do in case they believed his defensive testimony, it was his right to have the law plainly put before them applicable to the testimony. This we believe was substantially done in the charge quoted. No right of the accused seems to have been denied him. If the jury did as they were told to do and put themselves in what they believed from all the testimony to have been the true standpoint of the accused at the time; and if they viewed the transaction from said standpoint in determining whether he acted in self-defense, this would be as much as appellant was entitled to, and he would have no ground for complaint. We do not think the charge well drawn, and would not advise following its form, but are of opinion that under the facts in this case no harm resulted.

The complaint set out in bill of exceptions No. 1 is not briefed by appellant, and we think is wholly without merit.

Appellant's bill of exceptions No. 2 was taken to the action of the court in excluding testimony of two witnesses as to the conduct of one of said witnesses relative to a girl in the employe of appellant. The matter seems of no moment. Appellant did not assert on this trial that anything said or done by either of said parties affected him in any way in this killing. The one of the said parties to whom he attributed improper conduct was Wooldridge, and appellant testified on this trial that he knew the man he was shooting was not Wooldridge. He testified that he did not know at the time who it was that he shot. Bill of exceptions No. 3 was taken to the overruling of the exception to the charge, which we have above discussed at some length.

Bills Nos. 4 and 5 set out the refusal of special charges in which respectively the right of appellant to defend against an attack upon his residence — and an attempt on the part of

deceased to forcibly enter the residence and take from appellant his gun, were presented as defensive issues. We are of opinion that no facts appear calling for such charges. Viewing the testimony of the six men who appeared for the state, they all say that deceased made no move of any kind toward appellant or his place. Appellant does not undertake to say who used some threatening language toward his place of business before he came to the door, nor does he offer to identify the voice of deceased admitting that he was the party who threw the sign down, as that of the party whom he heard talking before he came to the door. Nor does he say that deceased made any movement indicative of any attack upon appellant's property or his possessions after he, appellant, came to the door. A statement if made that deceased would eat the gun of appellant, if he did not put it down, would not be deemed to furnish ground for charging upon the right to kill in defense of property, but might be considered in determining the attitude of deceased toward the person of appellant.

Bill No. 6 complains of the refusal of a charge on threats made by deceased at the time of and coincident with the homicide. Mr. Branch cites many cases in Sec. 2075 of his Annotated Penal Code, holding it not necessary to charge on threats made at the time of and during the fatal difficulty. Hancock v. State, 47 Tex. Crim. Rep. 3; Dobbs v. State, 54 Tex. Crim. Rep. 552.

Complaint is made of the lack of sufficient facts to support the verdict. As we view this record appellant has cause to thank the jury or his able counsel for the verdict of manslaughter. The overwhelming weight of testimony shows that he became angered at some man outside of his place of business who threw his sign off the sidewalk; that he came to the door with a gun, cursed and abused such party and threatened to shoot him if he did not put the sign back, and then apparently without any provocation whatever, except the fact that the man refused to put the sign back, fired his shotgun loaded with No. 2 or No. 4 shot into the body of deceased.

We have carefully examined the able brief filed on behalf of appellant, and have considered each proposition therein discussed in the light of the authorities cited.

Being unable to agree with appellant's contentions, and finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—There can be no difference of opinion between this court and counsel for appellant as to the soundness of the law as announced in Carlile v. State, 90 Tex. Crim. Rep. 1, 232 S. W. 822, upon the question that if it reasonably appeared to appellant, viewed from his standpoint at the time of the homicide that deceased was about to attack appellant he would have the right to defend upon the ground of apparent danger. In excepting to the eighth paragraph of the court's instructions appellant set out said paragraph and then specifically said that "the objection to such portion of the charge is that it submits a hypothetical case not made out by the evidence in that the evidence does not show that deceased *had made an attack upon the defendant.*" The court had not in said paragraph limited appellant's right to defend against an *actual attack* but had included therein his right to defend if deceased was *about to attack.* The exception ignored the ninth paragraph of the charge, which is as follows:

"In connection with the foregoing charge in respect to the right of the defendant to act in self-defense, either as against any act, words or demonstrations of the deceased, it matters not whether the danger, if any, was real and in fact existed, or whether the same was merely apparent; the defendant had the legal right to act in self-defense, as that right is herein explained whether the danger, if any, was real or apparent, and in determining the rights of the defendant to act it is your duty to take into consideration all the facts and circumstances adduced in evidence in this case and place yourselves in his position at the time of the killing and view the same from the standpoint of the defendant and from his standpoint alone, as it reasonably appeared to him at the time of the killing."

It is true the exception further states that "the charge should have instructed the jury if the defendant reasonably believed that deceased was about to make an attack upon him to take his life or do him serious bodily injury he would have a right to shoot deceased and such killing would be in self-defense." Having undertaken to cover such phase of the law in the eighth and ninth paragraphs of the charge it is to be seriously doubted if the objection as framed suggested to the trial court—or was sufficiently definite to suggest—that appellant was directing his objection to the form in which the law was submitted. The wording of the objection would rather indicate that appellant was complaining because of a supposed omission from the

charge, but which upon inspection by the trial court _would disclose no omission but would show that the principle had in fact been embraced in the eighth and ninth paragraphs.   Under such circumstances we cannot hold the exceptions to have "distinctly specified" the ground of objection as required by Art. 658, C. C. P.   We are further confirmed in the view that considering the charge upon self-defense in its entirety no harm could have resulted to appellant therefrom.

The motion for rehearing is overruled.            *Overruled.*