### OSCAR PRIVETT v. THE STATE.

No. 14559. Delivered December 9, 1931.

The opinion states the case.

*L. H. Flewellen,* of Ranger, and *Frank Sparks,* of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for thirty years.

The state relied largely upon appellant's confession to show that appellant shot deceased, Melvin Dunson, without provocation. In his confession appellant stated that he and deceased had gone with the same girl, and that deceased had become somewhat angered because of his attentions to this girl; that on various occasions deceased had come to his (appellant's) sister's house and endeavored to get him to fight him; that deceased had been guilty of insulting conduct toward his sister and sister-in-law; that he decided to settle his differences with deceased, and procured a pistol and went to deceased's house; that he asked deceased to leave the house and go with him to a railroad; that after he reached the railroad he told deceased what he had come up there for, and deceased said that it was all right. At this point we quote from the confession as follows: ."We got to talking about it and I asked about kissing my sister-in-law, and he said he did and he then hit at me. He didn't hit me and I dodged him. He did not have anything but his fist. I dodged and grabbed my gun and he turned and said: 'Don't shoot', and then I shot him. I shot him twice as he fell. He was falling when I shot the second time—he said 'Oh' and just crumpled down and straightened out and only moved one hand. He fell nearly under the bridge of the railroad. I turned around and started off and looked back. I aimed at his heart, is where I shot at first and then when he started to falling I just shot him and let him go. I went on down the railroad of Jake Hamon on home. I pitched the gun down and told my sister-in-law I didn't guess we will have any more rackets with Melvin. She said, 'Oh, why' and I said 'Well you will find out later'. She commenced to cry and asked me what 1 did it for and I said 'We would not have any more rackets'. I left and came to town and went back and was arrested. Yes, I shot him to kill him and I thought I would just kill him and be done with it."

Appellant's sister and sister-in-law testified that deceased had endeavored on a number of occasions to prevail upon appellant to fight him. They also testified that two days prior to the homicide deceased had been guilty of insulting conduct toward one of them. Many witnesses testified that appellant's mentality was of a low order. Some of the witnesses stated that appellant had the mind of a twelve-year-old child. Other

witnesses testified that in their opinion appellant did not know the difference between right and wrong. There was an issue as to appellant's age at the time of the trial, appellant's testimony tending to show that he was under seventeen years of age, and the testimony on the part of the state showing that he had just passed the age of seventeen. An issue as to the voluntary character of the confession wais raised by appellant's testimony. Appellant said that the county attorney told him that he wanted to make a statement. He said further that he was ·advised that if he made the statement it would help him. He denied that the statement introduced in evidence by the state reflected the true facts. Further, appellant testified that deceased had frequently mistreated him, and endavord to engage him in fights. He also testified that deceased had been guilty of insulting conduct toward his sister and sister-in-law.

Touching the circumstances surrounding the homicide, appellant testified that he had no intention of killing deceased when he went with him to the railroad crossing; that deceased told him while they were going down to the railroad that he was going to "jazz" his (appellant's) sister and sister-in-law and that he was going to kill appellant, and then keep on having illicit relations with his female relatives; that he told deceased that he was tired of being cursed by him, and asked him why he felt like he should run over his sister and sister-in-law; that at this point deceased struck at him with his fist, and he pulled his gun; that he did not know whether deceased had anything in his hand or not; that he pulled his gun because he was afraid that deceased was going to kill him; that he did not remember what happened after he shot deceased; that he would not have killed deceased if he had not threatened to kill him and struck at him. We quote from appellant's testimony as follows: "Melvin Dunson was close enough to strike at me when he told me he was going to kill me, and then 'jazz' my sister and sister-in-law. We had been walking too close together. He did have his hand in his pocket. I could not see what he had in his left hand. I thought he had a gun. I was afraid when he struck at me. I shot him when I did because I thought my life was in danger, and I thought he had a gun and was going to kill me and because he had been running over my sister. I did not touch his body after I shot him. I did not look to see if he had a gun in his pocket. As far as I know he might have had one in there."

In submitting the law of self-defense, the court laid down the general principles applicable, telling the jury that a party can use such force as is reasonably necessary if it appears to him from his standpoint at the time that he is in danger; but in the paragraph applying the law to the facts, the court instructed the jury as follows: "Bearing in mind the foregoing, you are instructed that should you find and believe from the evidence that the deceased, Melvin Dunson, made an assault upon the defendant with his hand or other object and that the deceased at the time of the killing

made an assault on the defendant or was attempting to make an assault upon the defendant with a pistol or knife or any other weapon which may have been concealed upon his person, if any, and that it reasonably appeared to the defendant at the time, viewed from his standpoint, that the deceased, Melvin Dunson, was about to inflict death or serious bodily injury upon the defendant and that the defendant shot and killed the deceased, Melvin Dunson, in order to defend himself against what appeared to him to be either death or serious bodily injury, and that the said defendant used no greater force than was reasonably necessary, then and in such an event the defendant would not be guilty of murder and you should acquit him."

This charge was excepted to as only presenting the isue of self-defense from the viewpoint of an actual or threatened attack by deceased with a pistol or knife or some other weapon which deceased had concealed on his person. Appellant testified that deceased had his hand in his pocket but that he could not see what was in his hand; that he believed that deceased had a gun and was going to kill him. Manifestly, the charge of the court was not a correct announcement of the law applicable to the rights of appellant. Appellant's testimony raised the issue that he believed that deceased had a gun in his pocket and was preparing to draw it and kill him. The matter should have been presented as it reasonably appeared to appellant and from his standpoint at the time. The charge in effect confined the jury's consideration to an actual or threatened attack by deceased with a pistol or other weapon. We quote the language of Judge Lattimore in Logan v. State, 107 Texas Crim. Rep., 297, 296 S. W., 570, as follows: "The court charged the jury on self-defense; the charge was excepted to as only presenting said issue from the viewpoint of an actual attack by Rutland, the injured party, and not from the viewpoint of apparent danger. In paragraph 8 of the charge, in laying down the general principles applicable, the court told the jury that a party can use such force as is necessary if it appears to him from his standpoint at the time that he is in danger; but in paragraph 9 of the charge, applying this general principle to the facts in the particular case, the learned trial judge told the jury that, if they believed 'Rutland had made an attack upon him', etc., they should acquit. Manifestly this is not a correct announcement of the law applicable to the rights of the accused, if the facts showed or tended to raise the issue, that he believed Rutland, or the man confronting him as he entered his father's house, had a pistol in his hand, and if they believed it reasonably appeared to the appellant from his standpoint at the time that his life was in danger from a threatened attack by the party having such pistol."

In Gilbert v. State, 114 Texas Crim. Rep., 532, 26 S. W. (2d) 644, it was said that "it is never necessary for anyone who claims to have acted in self-defense, to wait until his adversary has made an actual attack upon

him. He may act upon the reasonable appearances of danger as viewed from his standpoint, and the jury must be so told." See also Bazan v. State, 111 Texas Crim. Rep., 320, 12 S. W. (2d) 788; Singleton v. State, 86 Texas Crim. Rep., 401, 216 S. W., 1094; Carlile v. State, 90 Texas Crim. Rep., 1, 232 S. W., 822; Vega v. State, 102 Texas Crim. Rep., 37, 276 S. W., 1104; Holland v. State, 118 Texas Crim. Rep., 439, 39 S. W. (2d) 35.

Without setting out the charge on threats and the exceptions thereto, we express the opinion that the court should have amended the charge to meet the exceptions.

In his brief appellant complains of the action of the court in failing to charge on reasonable doubt in connection with the instructions on self-defense and threats. We find no specific exception calling this matter to the trial court's attention.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.