**J. D. SANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 39274.**

Court of Criminal Appeals of Texas.

March 30, 1966.

Rehearing Denied May 25, 1966.

James A. Moore, Clyde W. Woody, Fred H. Dailey, Jr., and John P. Farra, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Thomas C. Dunn, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is murder; the punishment, life.

The indictment alleged that appellant, on or about the 5th day of July, 1964, "did with

malice aforethought kill James Mason by shooting him with a gun."

Appellant moved to quash the indictment because of the absence of an allegation that he "voluntarily" killed the deceased.

This Court held in Crutchfield v. State, 110 Tex.Cr.R. 420, 10 S.W.2d 119, that an averment that the killing was done "with malice aforethought" was sufficient, though the statute defining murder provides "whoever shall voluntarily kill any person within this state shall be guilty of murder." See also Landers v. State, 114 Tex.Cr.R. 352, 25 S.W.2d 868; House v. State, 128 Tex.Cr.R. 404, 81 S.W.2d 708; Taylor v. State, 133 Tex.Cr.R. 56, 106 S.W.2d 681; and Sparacino v. State, 170 Tex.Cr.R. 278, 340 S. W.2d 47.

Consistent with such prior opinions, we hold that the trial court did not err in overruling appellant's motion to quash the indictment.

The sufficiency of the evidence to sustain the jury's verdict is not challenged.

The statement of facts reflects the following:

James Mason was shot to death by a .38 caliber revolver in the hand of J. D. (Vada) Sanders, the appellant. The shooting took place in front of the Redmen's Club at 511 Main Street, in Baytown, Harris County, Texas, on July 5, 1964.

Four of the five bullets fired from the .38 caliber revolver struck the deceased. One entered the midline of the upper abdomen, one the right side, another the right upper chest and the other the face, penetrating the cheek and lodging in the spine.

Immediately after the shooting, appellant told somebody to call the police. He remained at the scene until Police Officer Herring arrived and, in answer to the officer's question: "Can you tell me what happened?" appellant replied "Yes, I shot him," and said that the gun was on the front seat of his car and the officer got the .38 caliber Smith and Wesson 5 Shot Airway revolver, a pistol which contained "5 spent rounds that had been fired."

No weapon was found on or near the body of Mason and no witness testified that he was armed.

In March, 1964, Mason lost a considerable sum of money gambling with a man named O'Neill, at another Redmen's Club in Baytown of which appellant was manager. Mason became convinced that he had been cheated by O'Neill and suspected that appellant had "set him up."

Several witnesses testified that they heard Mason say that if he found out that appellant had something to do with O'Neill beating him out of his money he was going to kill him, or that he was going to get his money back or kill him. These threats were communicated to appellant.

Following a conversation by telephone between the deceased and the appellant, and between appellant and his friend Louis B. Russell, on July 5, the deceased and Russell came out of the Redmen's Club together to meet appellant. Appellant drove up and stopped on the other side of the street.

Witnesses for the state testified that the deceased and Russell started to walk across the street toward appellant's automobile. As they did so, appellant said: "Mason, I tried to avoid this but you forced me on it," and fired three shots while he was still sitting in the car and Mason fell to the ground.

Appellant then got out of his car and fired twice more as Mason, lying on the ground, raised his head.

Testifying in his own behalf, appellant told of the communicated threats and testified to threats and an assault he said Mason had made upon him which caused him to be "deathly afraid" of him.

Appellant's version of the shooting was that Mason started across the street very

rapidly and when he got to about the middle of the street he said "Vada, this is it" and reached toward his middle section, he thought for a gun, and in order to warn Mason that he had a gun in his car he (appellant) said "don't force me," and grabbed his gun, which was on the floor board, and started shooting.

The court, in his charge, instructed the jury upon the law of self-defense when one is unlawfully attacked or threatened with attack by another and there is created in the mind of the person so attacked or threatened with attack a reasonable expectation or fear of death or serious bodily injury, and instructed that "it is not necessary that there should be actual danger, as a person has the right to defend his life and person from apparent danger as fully and to the same extent as he would have were the danger real * * *."

The court's charge applying such law instructed the jury to acquit if they believed or had reasonable doubt that at the time the deceased was shot *"the deceased had made or was about to make an unlawful assault on the defendant, and the defendant reasonably believed from the conduct or acts or words, or words coupled with acts or conduct of the deceased, if any, viewed from the defendant's standpoint at the time, in the light of all the facts and circumstances within his knowledge, that the deceased was about to attack the defendant and kill him or inflict upon him serious bodily injury, and the defendant shot and thereby killed the deceased, acting under a reasonable apprehension or fear of death or serious bodily injury, then the defendant would be justified in so shooting and killing the deceased under such circumstances * * *."*

The jury was also instructed as to the right to continue to shoot until the danger or apparent danger shall cease, and upon the law of threats as justification.

■ Among the 24 objections to the court's charge appellant, in paragraph 21,

objected to the "charge on self-defense set forth on pages 4 and 5 of the charge and says that such instructions are erroneous and too restrictive and operate to impose on him a burden more onerous than is imposed by law," and for reason quoted the portion of the court's charge on self-defense above italicized.

We agree with the state's contention that the objection was not sufficiently definite under our holding in Hoover v. State, 109 Tex.Cr.R. 564, 5 S.W.2d 982, 986.

If before us, the contention that reversible error is shown in the overruling of such objection to the charge on self-defense is overruled.

■ Appellant's third point relates to the following testimony of Baytown Police Officer D. L. Herring:

"Q. Mr. Herring, I will hand you the pistol which has been introduced—admitted into evidence that is, as State's Exhibit No. 1, sir, and ask you if you have had occasion to pull the trigger on that pistol?

"A. Yes sir, I have.

"Q. As a police officer and in your other life, have you had occasion to become familiar with firearms, especially revolvers and handarms as they call them?

"A. Yes sir, I have.

"Q. Describe as best you can the pull of that trigger to the jury as best you can find words.

MR. McMANUS: I object. This would call for sort of conclusion on the part of this witness.

THE COURT: Overruled.

"Q. And is it a heavy or light pull, Mr. Herring?

"A. It is a heavy pull."

The admission of this testimony which related to the pistol introduced in evidence

as the murder weapon, over the objection made, is not ground for reversal. Appellant admitted that he pulled the trigger and fired the fatal shots.

 Appellant's last point relates to the court's refusal to allow appellant's trial counsel to examine a transcript of the testimony of state's witness Russell before the grand jury.

The state is not required to produce for inspection of the accused the testimony of witnesses before the grand jury. Hanes v. State, 341 S.W.2d 428, 170 Tex.Cr.R. 394; Nisbet v. State, 170 Tex.Cr.R. 1, 336 S. W.2d 142, cert. denied, 363 U.S. 829, 80 S.Ct. 1601, 4 L.Ed.2d 154; Bryant v. State, Tex.Cr.App., 397 S.W.2d 445.

Appellant's counsel requested that the trial judge examine the transcript and make it a part of the record on appeal. This was done and the testimony of the witness Russell before the grand jury was made available to appellant's counsel on appeal and is before us as an exhibit for appellant's bill of exception.

During Russell's examination before the grand jury, he testified that he saw the deceased make no move prior to being shot. On the trial he was not asked the question by either the prosecution or the defense. It follows that this appellant was not deprived of the right to show a discrepancy in the witness' testimony.

The judgment is affirmed.

MORRISON, Judge (concurring).

I concur with the result reached by the majority, but cannot agree with the blanket statement that "The state is not required to produce for inspection of the accused the testimony of witnesses before the grand jury."

In the original opinion of the majority in Bryant, supra, the rule was accepted that where a witness had refreshed his memory from his testimony before the grand jury,

the accused was entitled to examine such testimony for the purpose of impeachment.

In the relatively recent case of Bradford v. State, 170 Tex.Cr.R. 530, 342 S.W.2d 319, the Court, speaking through the author of the majority opinion herein, recognized that an accused had the right to lay a predicate to impeach a witness by proof that he had testified differently before the grand jury.

For this reason I concur in the affirmance of the conviction, but do not agree to the paragraph referred to in the majority opinion.