

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00174-CR

---

JEREMY NEIL ATCHISON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 19-10-9716, Honorable Pat Phelan, Presiding

---

January 14, 2025

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, Jeremy Neil Atchison, appeals his conviction for the offense of capital murder[1] and resulting sentence of life in prison without the possibility of parole. We affirm the judgment of the trial court.

---

[1] *See* TEX. PENAL CODE ANN. § 19.03(a)(2).

## BACKGROUND

At approximately 1:30 p.m. on August 31, 2019, Appellant's mother, Jill Atchison, told Appellant's sister, Megan, that she was going to confront Appellant about his behavior and drug abuse. Jill expressed to Megan that she feared Appellant because he had threatened her in the past. Throughout that afternoon and into evening, neither Megan nor other family members were able to contact Jill. When family members contacted Appellant about Jill's whereabouts, Appellant claimed that she was in the back yard watering some flowers. Eventually, Megan called the police for a welfare check on Jill.

Levelland Police Officer Dakota Moody was dispatched to Jill's residence to perform the welfare check. He arrived in a marked police vehicle and wearing a police uniform. Appellant was getting into a vehicle. When Moody inquired about Jill, Appellant said that she was in the house. Appellant then attempted to back out of the driveway. Moody directed Appellant to put the vehicle in park. Appellant then told Moody to leave the property. Appellant also asked Moody if his sister had called the police. Over Moody's repeated directives to stop, Appellant drove away from the scene. Upon entering the residence, officers discovered Jill's dead body. It was later determined that she had been strangled and then shot in the head from close range.

Appellant was arrested for Jill's murder. After his arrest, Appellant admitted that he strangled his mother, shot her, and took money from her purse. He also stated that he was aware of what he was doing at the time, including stating that he "definitely" intended to kill his mother. He was subsequently indicted for capital murder. The initial indictment alleges that Appellant "intentionally cause[d] the death of . . . Jill Atchison, by

shooting" her while committing robbery. Four years later, the State filed a motion to amend the indictment to allege that Appellant committed murder by shooting and/or strangling Jill. After Appellant did not object, the trial court granted the motion and the amended indictment was incorporated into the record.

At trial, Appellant did not contest that he killed Jill; rather, he asserted the affirmative defense that he was insane at the time of the killing. The State offered the opinions of multiple family members, who spoke with Appellant on the day of the murder, that he was aware of what he was doing and knew the difference between right and wrong. The State also offered evidence that Appellant committed the murder for reasons other than acting under the compulsion of mental illness and that his mental condition was impacted by his voluntary intoxication. Appellant offered the testimony of multiple experts, one of whom opined that Appellant was insane at the time of the murder. The jury charge submitted to the jury included the language of the amended indictment. Appellant did not raise any objection to the charge as submitted. The jury rejected Appellant's insanity defense and found him guilty of capital murder. The jury then returned a verdict sentencing Appellant to life in prison without the possibility of parole. The trial court entered judgment in accordance with the jury's verdicts and Appellant timely appealed.

By his appeal, Appellant presents two issues. By his first issue, Appellant contends that the trial court erred by submitting a jury charge that included the manner and means of committing the offense that had been added by the amended indictment. By his second issue, Appellant contends that the trial court erred by letting the case go to

3

the jury because the jury's rejection of Appellant's insanity defense was against the great weight and preponderance of the evidence.

## ISSUE ONE: CHARGE ERROR/AMENDED INDICTMENT

By his first issue, Appellant contends that the trial court erred by submitting a jury charge containing language from a purportedly amended indictment when the amendment had not been accomplished.

To preserve error, a defendant must object to an amended indictment. *See Trevino v. State*, 470 S.W.3d 660, 662 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("a defendant waives this error [in amending the indictment] by failing to object to the amendment"); *Adams v. State*, 179 S.W.3d 161, 163 (Tex. App.—Amarillo 2005, no pet.) (defendant must make timely objection to amended indictment to preserve claim of erroneous amendment on appeal). "[A] defendant cannot fail to object to a defective charging instrument, then be convicted, then later claim that there was error going to trial upon the defective instrument." *State v. Murk*, 815 S.W.2d 556, 558 (Tex. Crim. App. 1991) (en banc).

In the present case, Appellant contends that the jury charge was erroneous because it included a manner and means of committing the offense that was not contained in the original indictment but was added by a pretrial amendment to that indictment. He contends that the amendment to the indictment was ineffective and, therefore, he was egregiously harmed[2] by the jury charge's inclusion of a manner and

---

[2] Appellant acknowledges that he did not object to the jury charge and that the egregious harm standard applies to his claim. *See, e.g., Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (en banc).

4

means of committing the offense that was not part of the original indictment. However, Appellant is attempting to circumvent the requirement that he timely object to the amended indictment to preserve error for appeal by couching his argument as a claim of jury charge error. Appellant's argument in support of his first issue contends that the jury charge was erroneous because it was based on an ineffectively amended indictment. The record reflects that Appellant was aware of the motion to amend the indictment, the order approving the amendment of the indictment, and the amended indictment. Nonetheless, Appellant did not raise an objection to the amendment of the indictment or the process by which the amendment was effectuated until his appeal.[3] Consequently, we conclude that Appellant has waived any error in the amendment of the indictment by not raising a timely objection. *See Trevino*, 470 S.W.3d at 663–64; *Adams*, 179 S.W.3d at 163. Thus, we must utilize the amended indictment in analyzing Appellant's first issue. *See Trevino*, 470 S.W.3d at 664.

The jury charge in this case accurately followed the amended indictment. Because Appellant waived any objection to the amendment of the indictment, the jury charge, which comported to the amended indictment, was not in error. *See id.* We overrule Appellant's first issue.

---

[3] As previously indicated, Appellant did not object to the jury charge on the basis of the allegedly improper amendment to the indictment or on any other basis.

## ISSUE TWO: EVIDENTIARY SUFFICIENCY OF INSANITY DEFENSE

By his second issue, Appellant contends that the trial court "erred by letting the case go to the jury,[4] as the jury's verdict rejecting Appellant's affirmative defense of insanity was against the great weight and preponderance of the evidence."

"It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a). In this context, "wrong" means illegal. *Ruffin v. State*, 270 S.W.3d 586, 592 (Tex. Crim. App. 2008). In assessing a claim of insanity, the factfinder is to determine whether the defendant factually knew that society considers his conduct against the law, even if Appellant believed, due to his mental disease or defect, that the conduct was morally justified. *Id.* A defendant is presumed to be sane and bears the burden of proving his defense of insanity by a preponderance of the evidence. *Id.* at 592 n.13 (citing *Martinez v. State*, 867 S.W.3d 30, 33 (Tex. Crim. App. 1993) (en banc), and *Manning v. State*, 730 S.W.2d 744, 746 (Tex. Crim. App. 1987) (en banc)).

"[A] person who was shown to be skilled or experienced in mental diseases may give his opinion, based on a hypothetical state of facts or upon evidence adduced at the trial, as to the sanity or insanity of the person in question." *Hurd v. State*, 513 S.W.2d 936, 944 (Tex. Crim. App. 1974). However, the issue of a defendant's insanity is not

---

[4] While the language used by Appellant implies that the trial court should have granted a directed verdict in favor of Appellant, Appellant did not move for directed verdict. As such, he has waived his right to complain on appeal about the trial court's failure to grant a directed verdict. *See* TEX. R. APP. P. 33.1; *Finney v. State*, No. 02-02-00034-CR, 2003 Tex. App. LEXIS 663, at *3 (Tex. App.—Fort Worth Jan. 23, 2003, pet. ref'd) (mem. op.). Despite the wording of Appellant's second issue, when asked at oral argument, Appellant stated that he was not asserting a challenge to the trial court's failure to grant a directed verdict.

strictly medical. *Graham v. State*, 566 S.W.2d 941, 949 (Tex. Crim. App. 1978) (en banc). A properly qualified nonexpert witness may express an opinion as to whether the defendant knew right from wrong at the time of the offense. *Fuller v. State*, 423 S.W.2d 924, 928 (Tex. Crim. App. 1968). A nonexpert must articulate facts upon which his opinion is based so that the jury can weigh the witness's testimony. *Id.* at 929. Nonexpert witnesses are confined to express their opinions at the time of their observations of the accused and cannot be allowed to project their opinions of the accused's mental condition at a future time. *Id.* While expert witnesses can give testimony that may aid the jury, only the jury can join the medical and nonmedical evidence to make the ultimate determination of whether a defendant was insane at the time of the crime. *Graham*, 566 S.W.2d at 949.

By his second issue, Appellant challenges the factual sufficiency of the evidence supporting the jury's rejection of his insanity defense. In reviewing the factual sufficiency of the evidence relevant to an affirmative defense of insanity, we consider all the evidence relevant to the defense to determine whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Bigby v. State*, 892 S.W.2d 864, 875 (Tex. Crim. App. 1994) (en banc). Whether insanity has been established lies in the province of the jury both as to the credibility of the witnesses and the weight of the evidence. *Graham*, 566 S.W.2d at 952. As a consequence, rarely should we overturn the jury's determination of the insanity issue. *Id.* at 953. "[A]n appellate court may sustain a defendant's factual-sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-

7

shocking, or clearly biased." *Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013).

In the present case, Appellant's sister, who interacted with Appellant by text on the day of the murder and who had watched the interview of Appellant that was recorded shortly after the murder, testified that Appellant knew right from wrong at the time of the murder. Appellant's father, who spoke to Appellant soon after the murder, testified that he believed that Appellant knew right from wrong at that time. Appellant's grandmother, who spoke with Appellant by phone three times on the day of the murder, testified that Appellant knowingly lied to her about the victim's whereabouts. Texas Ranger Dominic Zuniga, who interviewed Appellant shortly after the murder, testified that he believes that Appellant knew right from wrong at the time of the murder.

Appellant called three experts. All three suspected Appellant suffered from schizophrenia but only one, Doctor Timothy Jacob Nyberg, opined that Appellant was insane at the time that he killed Jill. Nevertheless, during his testimony, Dr. Nyberg acknowledged that Appellant's actions on the day of the murder "are good indicators" that Appellant knew what he had done was wrong. Dr. Nyberg also testified that it was reasonable for the family to conclude that Appellant knew right from wrong on the day of the murder. The vacillating nature of Dr. Nyberg's opinion may have led the jury to discount his opinion in light of the additional evidence identified above. *See Harris v. State*, No. 14-94-01127-CR, 1997 Tex. App. LEXIS 4124, at *12 (Tex. App.—Houston [14th Dist.] Aug. 7, 1997, pet. ref'd) (expert's testimony of defendant's insanity may be weakened by inconsistent evidence).

8

The jury was entitled to believe the nonexpert witnesses over the single expert who opined that Appellant was insane at the time of the offense. *See Graham*, 566 S.W.2d at 950–51 (jury may accept or reject in whole or in part the opinion testimony of expert and may accept lay testimony over expert testimony). Additionally, Dr. Nyberg acknowledged that the lay opinions that Appellant was sane at the time of the murder were reasonable and that Appellant's actions were "good indicators" that he knew the difference between right and wrong. Further, the State offered evidence that Appellant committed the murder as part of a robbery rather than as the result of a mental condition. Finally, evidence suggested that Appellant's mental condition was exacerbated by his voluntary intoxication. Considering all of the evidence relevant to the issue, we cannot conclude that the jury's rejection of Appellant's insanity defense was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Bigby*, 892 S.W.2d at 875. We overrule Appellant's second issue.

## CONCLUSION

Having overruled both of Appellant's issues, we affirm the judgment of the trial court.

Judy C. Parker<br>
Justice

Do not publish.